## THE MINNESOTA VALLEY RAILROAD COMPANY

### *vs.*

## MICHAEL DORAN.

The respondent appealed to the district court from an award of commissioners appointed pursuant to the provisions of the company's charter, (*laws of* 1855, *ch.* 24, *sec.* 6,) to ascertain and determine the compensation to be paid to respondent for land to be taken for the use of said company. Said charter provides that the cause upon such appeal shall be entered, proceeded in and determined, in the same manner as cases on appeal from courts of justices of the peace. Said appeal coming on for trial in the district court, and a jury having been empannelled to try the issue raised on said appeal, the district court correctly decided, that the respondent should assume the position of plaintiff in the cause, and proceed to introduce his evidence in support of the issue made.

The Minnesota Valley Railroad Company v. Doran.

At the trial the appellants offered to prove that the respondent had sold large quantities of wood and ties to said company, and had realized large profits therefrom, in consequence of the location of the railroad across the land. *Held*, that this was not an offer to show such a benefit as the jury were authorized to allow in recoupment of respondent's damages.

Where the case as settled purports to set out neither the evidence, nor the charge in full, portions of the general charge which are embodied therein, to the effect that considerable had been said by counsel *pro* and *con*, with reference to the fact that one of the parties was a railroad corporation; that corporations were composed of men, who are generally, like all other men, naturally avaricious and grasping in their desires; that this is one of the characteristics of the human mind; that the combination of numbers of men, and the concentration of great wealth in their enterprises, generally creates a power which may be, and frequently is used to the detriment of the people; that they should, therefore, be carefully watched and guarded against; but that the ballot box, and not the jury box, was the place for that; and that, therefore, the jury should exclude all such considerations from their minds in considering this case, cannot be said to be obnoxious to the objection of great unfairness to the appellants, and necessarily tending to prejudice the jury against them, rather than as intended, in good faith to caution the jury against prejudice.

The following instruction was given at appellant's request: "The jury shall not take into account, or include in their estimate of damages, any sum for mere inconvenience in crossing the track of the said road from one side of the track to the other," with this qualification, to which appellants excepted, viz.: "but this does not mean, that where it is necessary to open and shut gates, or let down or put up bars, that the delay in time or labor in doing so, is not a proper subject for you to consider in making an estimate of the damage; on the other hand, I think it would be proper to consider it as an element of damages." *Held*, that said qualification was not erroneous in point of law. Necessary delay and labor in opening and shutting gates, and putting up and letting down bars, are not elements that make up, or go to make up, the mere inconvenience in crossing the track, which the jury are not to take into account as an item of damage.

The judge also instructed the jury at appellant's request, "that in assessing the damages, to be paid for the right of way across respondent's farm land, they shall take into account that the railroad company is obliged to construct and maintain all necessary and proper cattle guards, and farm crossings, and also, within two years after the completion of its said road through any improved lands, to build and maintain a legal fence on each side of its road

through such improved lands," adding this qualification, to which appellant objected, " that as, in this case, the land had been taken; the road built, and the fence erected; it would be proper for them to consider as an element of damage, whether such fence did not create a further obstruction to the free use of the farm; *i. e.* whether the fences and road did not damage the respondent more than the road alone would do." *Held,* that as this court could not, in the absence of evidence, assume that such may not, in point of fact, have been the case in respect to this particular farm; and as compensation is due the land owner for all such damage as may result from the construction and use of the road in the manner required by law; if such fences are in point of fact an injury, it is no reason for not compensating the land owner therefor, that the law compelled the company to build them intending thereby to benefit him. *Held,* also, that the qualification could not be considered under the circumstances, as duplicating the elements of damage referred to in the preceding instruction, aforesaid.

This cause was before this court at the January term, 1870, (15 *Minn.* 230,) and a new trial was then granted. The second trial resulted in a verdict for the defendant. The plaintiff made a motion for a new trial, which was denied, and it appeals from the order denying the same to this court. The case as presented on the former appeal is fully stated in vol. 15; the other material matters relative to the questions raised on the second appeal appear in the opinion of the court.

SWAN & BANGS, for Appellant.

CADWELL & SEVERANCE and BRISBIN & PALMER, for Respondent.

*By the Court.*—RIPLEY, CH. J.—This is the case in which a new trial was heretofore ordered (15 *Minn.* 230.) The appeal taken by Doran from the award of the commissioners, was upon the ground, that the award of said commissioners, is a wholly inadequate· compensation for the taking of said several parcels of land.

The Minnesota Valley Railroad Company v. Doran.

The said appeal coming on for trial at the October term, 1370, of the district court for Le Sueur county, and a jury empannelled to try the issue raised on said appeal, having viewed the premises, the railroad company offered to proceed and introduce evidence in support of the issue made by said appeal on the part of said company, to which Doran objected

The court decided that Doran should assume the position of plaintiff in the cause, and proceed to introduce his evidence in support of the issue made, to which the company excepted.

The company's charter provides that "the cause upon such appeal shall be entered, proceeded in and determined, in the same manner as cases on appeal from courts of justices of the peace." (*Laws of* 1855, *ch.* 24, *sec.* 6.)

General Statutes ch. 65, sec. 108, provides, as to the entering of such appeals, that, "The appellant shall cause an entry of the appeal, to be made by the clerk of the court, on or before the second day of the term, unless otherwise ordered by the court, and the plaintiff in the court below shall be the plaintiff in the court above." Strictly speaking there is here no plaintiff in the court below. The statute contemplates a separate cause as arising on the taking of the appeal between the company and each land owner who may appeal, or *vice versa;* and as the commissioners are not a court in the sense of this language, and their mode of procedure is discretionary in the matters here involved, (see 16 *Barbour* 68 where the language of the court applies very well to the provisions of this charter,) the provision in question can have no other bearing, if any, in a case of this kind, than that the appeal, as to the relative position of the parties upon the calendar, shall be entitled as the proceedings theretofore were, viz.: the company as petitioner, and the land owner as respondent. The charter preceeds to say, that in case the appeal shall involve the determination of any question of fact, the same shall be tried by a

jury.   It is of course to be tried in the same manner as an action originally commenced in the district court.

Gen. Stat. ch. 66., sec. 209, provides that unless the court for special reasons otherwise directs, the plaintiff shall open and close.

Under the discretion hereby given, the district courts of this state, like those of the territory, have, and rightly, regulated the conduct of the trial in this respect according to the immemorially established rule of both common and civil law, viz.: that the side which holds the affirmative of the question in issue shall open and close.   2 *Bl. Com. Book* 3, *ch.* 23, *p.* 366.

There could not be a fitter case for the exercise of discretion in this direction than on appeals of this kind.   The issue before the jury is the amount of compensation to be paid by the company to the land owner for the taking or injuriously affecting his land, in determining which, the jury are to take into consideration the benefits to accrue to him by the construction of the road, and allow the same by way of recoupment against the damages sustained thereby, and return their verdict for the balance of damages.

This settles the question as to the right to open and close in favor of the land owner.   The analogy is perfect between this case and an action for unliquidated damages or breach of contract, in which defendant claims a set-off by way of recoupment under Gen. Stat. ch. 66, sec. 79, 80, in which there could be no question that the affirmative of the issue was on the plaintiff.   The case of Connecticut River Railroad Co., vs. Clapp, 1 Cush, 559, is in point.   In that case the Railroad Co. appealed from the award.   " In cases where a re-assessment of damages is to be made by the jury, after an assessment has been made by the commissioners, it is immaterial which party makes the application for the assessment.   The party claiming damage, the same being unliquidated, and to be

settled by the jury, has the right of opening and closing the cause. 1 *Greenl. Ev. sec.* 76, 77; *Mercer vs. Whall*, 5 *Ad. & El.* 447. In this case the rule is, we think, correctly laid down by Lord Denman, and is decisive as to the present case. 'Whenever, (he says,) from the state of the record at *Nisi Prius*, there is anything to be proved by the plaintiff, whether as to the facts necessary for his obtaining a verdict, or as to the amount of damages, the plaintiff is entitled to begin.'      *      *      * The only question for the jury in this case, was a question of damages, which they were bound to assess without any regard to the previous assessment by the commissioners. There seems, therefore, no reason for allowing the petitioners to open and close."

The force of this authority is not affected by the circumstance, that in Massachusetts the application for assessment of damages, in the first instance, may be made by either party; nor by the fact that the court of Massachusetts does not, like ours, provide in terms, that the land shall not be taken without compensa'ion *first* paid or secured. The decision does not proceed at all upon such considerations. "Whether the land owner, being desirous to get his damages, is usually the moving party, and whether in all those cases the laws of Massachusetts look on him as a claimant and the acting party," as suggested by the petitioner, would obviously have been held as immaterial by the court, as the question as to which party applied for the jury would have been.

It does not appear who initiated the proceedings in the case above cited and it could have made no difference which. Before the jury, the parties stood just like the parties here; for in Massachusetts the jury estimate the damage to the land owner by taking or injuring his property, and allow by way of set-off, the benefit if any by reason of the construction of the road.

VOL. XVII.—24

The company called the respondent as a witness and asked him the following question : " What is the worth of cord-wood and railroad ties sold by you to the railroad company taken from the farm land in question ? " Which was objected to by the respondent; the objection was sustained, and appellant excepted. This ruling was, of course, entirely correct.

The company then offered to prove that the respondent had sold large quantities of wood and ties to the railroad company, and had realized large profits therefrom, in consequence of the location of the railroad across the land, to which the respondent objected, and the objection was sustained.

The appellant insists, that this was an offer to show such a benefit as the jury were authorized to allow in recoupment of the respondent's damage. How far it is from being such will appear from one or two very obvious reflections. Such benefit .must accrue from the construction of that particular portion of the road, which runs through plaintiff's land, and it must .accrue directly from such construction.

The offer in brief, is to prove that the respondent got a large price for wood and ties sold the company, because the road was on his land.

Now leaving out of view the fact that the offer did not, as the excluded question did, specify that the wood was taken from the land; and assuming that it was, which the court below was by no means obliged to assume in ruling upon the offer, it will at once be perceived, that such offer is obnoxious to the objection which was held fatal to the instruction asked and refused in Minn. Cent. R. R. Co. vs. McNamara, 13 Minn. 508; viz.: that it does not limit the supposed benefit to the land of the respondent.

Whoever in the county had cord-wood or ties to sell, might for aught the offer discloses, have sold them to the company at as high a price as the respondent, and for precisely the same

reason; viz : that the road crossed respondent's land.   To be sure, we cannot see how, but neither can we see how the mere fact that the road crossed his land could have possibly made the company give him more for his fuel and ties, than it would have done if the road had been near his land, but not on it.   We must take the offer as it was made.

The case purports to set out neither the evidence nor the charge in full.   Portions of the general charge which are given, are said by the appellant to be obnoxious to the objection of great unfairness to the appellant, and necessarily tending to prejudice the jury against it ; and we are urged, for that reason, to set the verdict aside.

The respondent, on the other hand, considers that the remarks of the court were intended to caution the jury *against prejudice.*   We cannot say, on this record, that he is wrong.

The remarks objected to begin with the statement that, "considerable has been said by counsel *pro* and *con.*, with reference to the fact that one of the parties to this proceeding is a rail road corporation."

We all know what the usual arguments are on this head from our own observation, and when the jury has been thus addressed, we do not perceive how it could have any tendency to inflame them against appellant, to tell them, that corporations, like the individuals that compose them, are naturally grasping and avaricious, (whether this be a sufficiently cheerful view of human nature or not) and that the combinations of men, and the concentration of great wealth in their enterprises, generally creates a power which may be, and frequently is used to the detriment of the people, and they should, therefore, be carefully watched, and closely guarded; but that the ballot box, and not the jury box is the place for that; and that, therefore, the jury should exclude all such considerations from

their minds in considering the case; which is, in substance and effect, the language which is objected to.

The appellant complains, that being a corporation, it is hereby held up to the jury as avaricious and grasping; but inasmuch as the jury are told that all mankind are necessarily equally so, such a general remark could hardly excite a prejudice against the appellant. Nor does the judge make any personal application to the appellant. It is not stated to be wealthy, or powerful, or corrupt, or to be making a bad use of its power.

There is no pretence on this record for saying that in the statement of these general propositions respecting corporations, and his caution to the jury against allowing themselves to be influenced by such considerations, the judge was not acting in good faith; if so, it is immaterial whether the theories in question are well founded, or not, for, even if they are not, an erroneous opinion upon an abstract question is no ground of error.

The seventh instruction requested by the appellant is as follows:

"The jury shall not take into account, or include in their estimate of damages, any sum for mere inconvenience in crossing the track of the said road from one side of the track to the other;" which was given with this qualification, which appellant excepted to: "but this does not mean, that where it is necessary to open and shut gates, or let down and put up bars, that the delay in time or labor in doing so, is not a proper subject for you to consider in making an estimate of the damages; on the other hand, I think it would be proper to consider it as an element of damages."

The objection made by appellant, that this qualification was assuming facts not proved, is not open to it in this case, which does not purport to contain all the evidence.

As to the correctness of the qualification in point of law, it cannot be said that delay and labor in opening and shutting gates, and taking down and putting up bars, are the elements that make up, or go to make up, "the mere inconvenience in crossing the track," which, in accordance with the decisions of this court, was charged not to be an item of damage. (11 *Minn. p.* 531.)

If the road were fenced, there must be bars, or gates, or the track could not be crossed at all; to take down the bars or open the gate, would be a pre-requisite to crossing, not a "mere inconvenience in crossing" the track. The necessity of so doing certainly detracts from the free use and enjoyment of the property. In so far as it does, it injuriously affects the property, and is to be considered by the jury.

It may also be observed, as to the matter of fact, that, aside from the consideration that the case does not contain all the evidence, it is quite an assumption on appellant's part, that the whole distinction only existed in the mind of the court.

It appears by the next instruction that this road had been built and fenced by the company through the improved lands; if so, there must be gates or bars in those fences if the "respondent is to cross the track at all in the cultivation of the farm," and that he would be obliged to do so, is fairly to be inferred from the evidence of Aldrich, who says "the road is a great trouble;" of Wood, who says, "it cuts the farms up into badly shaped fields," and of King, who says one "can work the land on each side of the road, but it would be a great deal of trouble. The road cuts through the cultivated land; leaves some on both sides," and of Daily, who says, "the road runs through the most fertile part of Doran's farm."

The eighth instruction requested, was given as follows: "The jury in assessing the damages to be paid by the respondent for the right of way across the farm lands, shall take

into account that the railroad company is obliged to construct and maintain all necessary and proper cattle guards, and farm crossings, and also, within two years after the completion of its road through any improved lands, shall build, keep and maintain a legal fence on each side of its railroad through such improved lands." To this the judge added: "Yes, gentlemen, this is a proper matter for your consideration, and as it is admitted in this case that the land has been taken, the road has been built, and the fences already erected, I think it would also be a proper matter for your consideration, as to whether the fences themselves do not create a further obstruction to the free use of this farm; i. e., whether the fences and road do not damage the appellant more than the road alone would do. I think that would be a proper subject for you to consider as an element of damage." To this qualification the appellant excepted.

The objection that there is no evidence going to show whether the fences and road damage the land owner more than the road alone, cannot prevail for the reason already stated, that the case does not purport to contain all the evidence; nor can we assume, without evidence, that such may not have been the case, in point of fact, in respect to this particular farm. The appellant's objection does not proceed upon the ground that it was not; but it is said that the law compels the company to build the fences; that they are meant for the owner's benefit, and the statute did not mean that the company should have to pay extra for being obliged to build them.

It cannot be contended, however, but that compensation should be made for all such loss or damage as may result from the construction and use of the road, in a manner required by the law. Though the law compelled the company to build these fences, intending thereby to benefit the land owner, yet, if in any instance they are in point of fact an injury, it is not

perceived why the land owner should not be compensated therefor.

We do not think that the charge is to be looked at as duplicating the element of damage referred to in the seventh instruction. In the first place, as the charge is not given in full, these qualifications may have been rendered necessary by the rest of the charge, and each qualification was proper in its connection, to prevent the jury from being misled by the generality of the requests. They might suppose, for instance, with the appellant's counsel, that the "inconvenience of crossing the track," included the inconveniences in the way of getting to it, and it might have been so argued to them. They might also suppose, and it might have been argued to them, that as the company had fenced the road in the manner required by law, it made no difference that the result was a further injury to that caused by the road itself; and without some such explanation as that given, they might construe the eighth request into a direction to consider the matter of fences solely as a credit.

If this qualification might itself mislead, by its generality, the appellant might have asked to have it made more specific, so as to exclude any such danger.

It will, of course, suggest itself, that while to the freest and most profitable cultivation of improved land, a railroad running longitudinally through it, is necessarily a hindrance, a fence on each side of such road, may be a still greater one; and this, altogether independent of the inconvenience of opening and shutting such particular gate, or bars, as may have been placed at any farm crossing, if any, located there.

There might be, for the purposes of such cultivation, gates or bars rendered necessary by such fences, at points which would not come under the appellation of necessary farm crossings, which, therefore, must be made at the owner's ex-

pense, and then only by the company's permission, all of which matters might have been in evidence, and not reported.

We see no ground for the objection, that the damages are excessive.

The respondent, indeed, himself estimated the damage to the farm at $1,352, while the jury awarded $1,527.75; but they were not bound by his estimate. Seven witnesses estimated the damage to it at more, ranging from $3,000 to $1,694. On the other hand, while the respondent considered his lots to be injured in the sum of $1,150, the jury awarded but $570. On the whole, we perceive no error for which this verdict should be set aside.

Order denying new trial affirmed.