# FOURTH DEPARTMENT,

#### AT

# GENERAL TERM,

## May, 1884.

33h 148
61ad485

In the Matter of the Application of the NEW YORK, LACKAWANNA AND WESTERN RAILROAD COMPANY, Respondent, to Acquire the Lands of SOLOMON SCHEU, Appellant, and Others.

*Taking of land for railroad purposes — verification of the petition — when a party is estopped from questioning it — who may verify it as an officer of the company — when the land of a landowner, over whose land the route does not pass, may be taken — the opening and closing argument — view of the premises.*

A petition filed by a railroad company to acquire title to land was verified by one Hough, who described himself in the affidavit of verification as being the general land agent and an officer of the company. It appeared upon the hearing that Hough was the general land agent of the company, and that he was authorized to purchase the right of way and other necessary lands, and bind the company by his contract, but that he was not the president, secretary, treasurer, nor a director thereof. The landowner made no special appearance or preliminary objection, but filed an answer and thereafter consented to the reference of one of the issues involved.

*Held*, that he thereby submitted himself to the jurisdiction of the court, and waived any right to question the sufficiency of the verification upon the ground that it was not made by an officer of the company as required by statute. (2 R. S. [7th ed.], 1549, § 14, and sec. 525 of Code of Civil Procedure.)

That the general land agent was an officer of the corporation within the meaning of that term, as used in 2 Revised Statutes (7th ed., 1546, 1547, §§ 5 and 6), and had a right to verify the petition.

The common council of the city of Buffalo authorized a railroad company to construct and maintain its road through Water street upon the condition that

the company should construct, maintain and operate a swing bridge across what was known as the Evans ship canal, at such an elevation and of such construction as not to impair the navigation of said canal as then existing, and not to infringe on vested private rights.

One Scheu was the owner of a piece of land lying west of the said canal and north of the line of the defendant's road. It was found necessary to construct a swing bridge on the west side of the canal, swinging to the north, and over the land of Scheu, which was required for this purpose.

*Held*, that as the consent of the common council was required to enable the company to construct its tracks in one of the streets of the city, and as it had power to impose the conditions above mentioned as to the construction of the bridge when granting the right so to do, and as the land was required for the proper operation of the bridge, the company was entitled to have the damages which Scheu would sustain determined by the commissioners, although the line of its proposed road did not pass over any part of his land.

The party whose land is taken and who claims damages therefor, has the right to the opening and closing argument in the proceeding.

The commissioners may re-examine the premises after the matter has been submitted for their decision.

APPEAL from an order of the Erie Special Term, made on the 10th of August, 1882, appointing commissioners to ascertain and appraise the compensation to be made to the owners of certain real estate which the New York, Lackawanna and Western Railroad Company sought to condemn for the purpose of constructing or operating its proposed railroad. Also an appeal from an order, made by the Erie Special Term on the 24th of October, 1882, confirming the report of said commissioners.

This proceeding was instituted by the New York, Lackawanna and Western Railroad Company to acquire title to certain lands in the city of Buffalo, of which Solomon Scheu was the owner in fee. The petition is in the usual form required by the general railroad act, and, among other things, alleges that the line of the proposed railroad runs for several hundred feet within the boundaries of Water street in said city, and within the limits of said street crosses the Evans ship canal; that in order to restore said street to its former state, or to such state as not unnecessarily to impair its usefulness, it is necessary to construct a swing bridge over said ship canal; and that for the purpose of constructing and operating said swing bridge the land in question is required.

An answer was filed by the owner denying that the petitioner had

located its proposed route along the line of Water street, or that it had given the notice of location required by statute, and alleging that the land described in the petition was not required by said railroad company for the purposes of its incorporation.

The referee to whom it was referred to report as to the necessity of taking the land, found that the Evans ship canal, extending from Buffalo river across Water street to the Erie canal, was built in 1834 to allow vessels to come from the river into the canal and reach docks upon either side thereof; that it has since been used for receiving and discharging freight both from lake and canal; that a draw-bridge, at first erected across it at Water street, was afterwards replaced by a swing-bridge, which of late years has been maintained at the expense of the city; that since 1863 said bridge has swung to the south on the easterly side of the canal, and has been of sufficient height above the surface of the water to allow canal boats to pass under it when closed; that the proposed bridge is to be built on the west side of the ship canal, and is to swing to the north, so that when it is open the long arm of the bridge will swing over the canal in question, and that its height will not allow canal boats to pass under it when closed; that it could not be built on the old site without interfering with adjacent buildings or preventing the use of docks, and that the land described in the petition was required for the purposes of the incorporation of the petitioner.

It further appeared from the evidence taken by the referee, that the common council of Buffalo had consented to the construction of the petitioner's road through Water street, upon the condition that the railroad company should construct, maintain and operate a swing bridge across said ship canal, "at such an elevation and of such construction as not to impair the navigation of said canal as now existing, and not to infringe on vested private rights." Said canal is private property, subject only to the public right of way in Water street. The bridge that the petitioner proposes to build is four feet lower than the present bridge, and it is necessary to construct the bridge at that height in order to conform to the grade of the street.

The land in question forms no part of Water street or of the roadway of the petitioner, but is contiguous thereto and lies on the northerly side thereof, and on the westerly side of said ship canal. The evidence tended to show that by taking the land in question

and building the kind of bridge proposed, the petitioner would inflict the least damage upon private rights.

The report of the referee was confirmed, and the other issues raised by the answer were tried by the court at Special Term, and determined in favor of the petitioner. From the order thereupon made appointing commissioners of appraisal, the first appeal is brought.

The commissioners thus appointed at first proceeded, in company, with the counsel for the respective parties, to view the premises in question, and then met to take the evidence. The counsel for the landowner insisted that the petitioner had the affirmative, and should offer his evidence first, and asked the commissioners to hold accordingly. The request was denied and exception was taken. Witnesses were thereupon called by either side, who testified to the value of the land to be taken, and as to the injury to the owner's remaining land. After the case had been summed up and submitted, the commissioners adjourned to a day certain, when they again viewed the premises, but without the presence, knowledge or consent of either party, or the counsel upon either side, and afterward made their award of damages. From the order of the Special Term confirming such award, the second appeal is brought.

*Humphrey & Lockwood*, for the appellant.

*Bowen, Rogers & Locke*, for the respondent.

VANN, J. :

The petition by which this proceeding was instituted was verified by James T. Hough, who, in the affidavit of verification, described himself as the general land agent and an officer of the petitioner. Upon the hearing before the Special Term, which resulted in the appointment of commissioners, Mr. Hough testified that he was general land agent of the petitioner, and had charge of securing the right of way and other necessary lands along the line from Binghamton to Buffalo, and in this sense was an officer of the company; that he was authorized to purchase the right of way and bind the company therefor, but was not the president, secretary, treasurer, or a director. After the hearing before the referee, and the trial before the Special Term, the objection was made for

the first time that this verification was insufficient, because not made by an officer of the company, and that hence the court had not acquired jurisdiction of the proceeding.

The verification was regular upon its face. There was no special appearance or preliminary objection made by the appellant, but his first act, after filing an answer, was to consent to the order of reference upon one of the issues. He thus submitted to the jurisdiction of the court, and waived any right to question the sufficiency of the verification. (*Matter of Boston, Hoosac T. and W. Ry. Co.*, 79 N. Y., 64.) By his general appearance, without objection, the jurisdiction of the court would have been complete, even if the petition had not been verified at all. The waiver is not affected by the fact that relying upon the affidavit he believed that the person verifying was an officer, for the court cannot be divested of jurisdiction by discovering that the defendant appeared through a mistake of fact.

It is provided by the general railroad act that the petition shall be signed and verified according to the rules and practice of the Supreme Court, and by the Code of Civil Procedure, that the verification of a pleading, where the party is a domestic corporation, must be made by an officer thereof. (2 R. S. [7th ed.], 1549, § 14; *Code of Civil Pro.*, § 525.) The statute further provides that there shall be a board of thirteen directors of every railroad corporation, elected by the stockholders, and a president, treasurer, and secretary, appointed by the directors. No other officer is specified by name, except the inspectors of election. The directors, however, are authorized to appoint, in addition to the president, secretary and treasurer, such "other officers and agents" as shall be prescribed by the by-laws. (2 R. S., 1546-7, §§ 5, 6.) A general land agent, having general charge of the subject of purchasing lands for all the purposes of a railroad corporation must be regarded as an officer of the corporation, having the right to verify petitions in proceedings to acquire title to lands. The statute expressly authorizes the appointment of other officers than those named therein. The Code provides for the service of process upon a managing agent. (Sec. 431.) Is not any managing agent presumed to be one of those "other officers?" What other distinction can be made between "other officers and agents," as used in the

statute, except that those possessing general authority are to be deemed officers, and those having limited authority, agents? The name of the position occupied is of less importance than the power that is exercised. Unless a general land agent is an officer, can a general superintendent, having entire charge of operating a railroad, be deemed an officer? In *Glaubensklee* v. *The Hamburgh and American Packet Company* (9 Abb., 104), it was held that a managing agent upon whom a summons had been served was an officer for the purpose of the action, and authorized to verify the answer. In like manner we think that the general land agent of the petitioner was an officer for the purpose of the proceeding, and authorized to verify the petition.

The appellant was not entitled to notice of the proposed route, because the statute provides for such notice only to actual occupants of the land over which the route is designated. (Sec. 22, p. 1554–5.) No provision is made for notice to owners of land required for other purposes than the construction of the embankment and the laying of the rails. No person, except an occupant or owner of land over which the route passes, feeling aggrieved by the proposed location, can take proceedings to secure an alteration thereof. (Id.) The route designated by the respondent does not pass over any part of the land in question, which lies wholly north of Water street, in which the railroad tracks are to be laid.

As no part of the land sought to be condemned is covered by the proposed route, the question arises whether the railroad company can acquire title thereto under the provisions of the general statute.

By section 28, subdivision 5, power is given to a railroad corporation to construct its road upon any street, provided the company shall restore such street to its former state, or to such state as not unnecessarily to have impaired its usefulness; and provided, also, that such railroad shall not be constructed in, upon or across any street in a city without the assent of the corporation of such city. (2 R. S. [7th ed.], 1557, 1558.)

The common council of the city of Buffalo in authorizing the construction of this railroad in Water street required the company to construct, maintain and operate a swing bridge across the Evans ship canal. The city had the power under its charter to grant this

right and to impose this condition. (*The N. Y. and H. R. R. Co. v. The Mayor, etc.*, 1 Hilt., 562; Pierce on Railroads, 247.) In order to comply with it the company was compelled to obtain land over which to swing the bridge when open or it could not operate its road. It was authorized by the thirteenth section of the railroad act to condemn any real estate required for the purposes of its incorporation. The purpose of its incorporation is to build and operate a railroad for public use. The operation of the road is as essential as its construction. The land in question, therefore, is needed for one of the legitimate purposes of the road; and when the necessity exists and a reasonable discretion is used the courts will not interfere, even if the exercise of the power to take lands under the statute is attended with extreme inconvenience and hardship to individuals. (*In re N. Y. Central and H. R. R. R. Co.*, 77 N. Y., 248; S. C., 63 id., 326; *In re N. Y. and Harlem R. R. Co.*, 46 id., 546.)

Whether the company has complied, or is intending to comply, with the conditions imposed by the city is immaterial in this proceeding. For the breach of a condition subsequent, such as the building of a bridge over the Evans ship canal, there is an appropriate remedy. Such a breach, however, is no defense to this proceeding. The consent of the city to the construction of the road through Water street authorizes the company to build its road accordingly, and the right to build the road, as already appears, involves the right to condemn the land in question. Questions relating to the performance of conditions do not come within the scope of this investigation.

Upon the trial before the commissioners there was no question as to the right of the landowner to damages. The only question was as to the amount of such damages. In other States the rule that the party entitled to unliquidated damages, there being no other issue, has the right to open and close, has been applied to the assessment of damages by commissioners in condemnation cases. (*Conn. River R. R. Co. v. Clapp*, 1 Cush., 559; *Minn. Valley R. Co. v. Doran*, 17 Minn., 188; *Evansville and C. R. Co. v. Miller*, 30 Ind., 209; *Charleston, etc., R. R. Co. v. Blake*, 12 Rich., 634.)

In the *Albany Northern Railroad Company* v. *Lansing* (16

Barb., 70) it was held that the subject was within the discretion of the commissioners.

Mr. Pierce, in his work on railroads (p. 187), says that the party claiming damages is deemed the actor or plaintiff, and has the right to open and close, whether the petition for an assessment was filed by himself or by the company. We think this is the correct rule.

The commissioners are required by the statute (sec. 16) to view the premises described in the petition, and it is claimed that it was irregular in this proceeding, after it had been summed up and submitted, for them to view the premises the second time, in the absence of counsel.

The situation and condition of the lands to be taken, and their relation to other property, are facts of the highest importance in making an estimate of damages. These facts may be proved, to a certain extent, by witnesses, but it is both the privilege and the duty of the commissioners to learn them from actual observation. By command of the statute they must view the premises, and hence courts are reluctant to review their award as to amount, because the view thus made cannot be presented on appeal. The view of the premises is, in the nature of evidence, to be considered by them in making a decision. When they meet for consultation, therefore, and consider all the evidence in the case, they have the same right to again view the premises that they have to consult their minutes or read an exhibit.

Each order should be affirmed, with ten dollars costs and disbursements.

HARDIN, J., concurred.

So ordered.