STEPHEN LAMM *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAIL-
WAY COMPANY.

December 17, 1890.

**Town-Site Act—Deed by Judge as Trustee — Presumption.—**Where a judge has executed a deed as trustee under the town-site act, the presumption in favor of official acts obtains, that he performed his duty in all respects.    A stranger to the title has no right to dispute the regularity of the acts of the judge in executing the deed.

**Damages—Single Trespass on Two Contiguous Lots.—**Where a single trespass is committed on two contiguous lots of the plaintiff, it is proper to assess the damages to both lots together, although they may not have been so used by the owner in connection with each other that they would be considered one tract in condemnation proceedings by a railway company.

**Railway—Effect of Law or Ordinance Authorizing Use of Street.—**An act of the legislature, or an ordinance of a city, authorizing a railway company to construct its road in a public street, gives it the right to do so only as against the public, but not as against owners of the abutting premises having private property rights in the street.   And where a mem-

ber of a city council votes for such an ordinance, his assent is referable only to the public easement, and not to his own private rights of property in the street.

**Same—Deed by Owner of Lots Abutting on Street—Construction.—** A conveyance of lots to a railway company, "for railway purposes," is not to be construed as covenanting that the street on which the lots abut, to the centre line thereof, may be used for such purposes, while it remains a street, so as to interfere with any easement constituting a private right of property which the grantor may have therein, appurtenant to other property abutting on the same street.

**Same—Construction in Street—Successive Actions by Abutter.—** Where a railway company unlawfully constructs its road in a public street so as to interfere with the private rights of abutters, it constitutes a *continuing* trespass, for which successive suits for damages may be brought, so long as the trespass is continued, until the occupation ripens into title by prescription.

**Street—Vacation—Effect on Rights of Abutting Owner.—**Where a public street is lawfully vacated, the owner of abutting property holds the fee of the former street, presumably to the centre line, discharged from all easements in favor of either the public or the owners of other property abutting on the street.

**Same—Vacation under Charter of Mankato.—**Under the charter of the city of Mankato, no street can be vacated unless authorized by the legal voters of the city.

**Same—Extent of Easement of Abutting Owner to Full Width of Street.—***Adams* v. *Chicago, B. & N. R. Co.*, 39 Minn. 286, followed, holding that the owner of a lot abutting on a public street in a city has, as appurtenant to the lot, and independent of the ownership of the fee in the street, an easement in the street to its full width, in front of his lot, for the purposes of access, light, and air, which constitutes property, and cannot be taken from him for public use without compensation.

**Damages—Construction of Railway in Street opposite Lot.—**In estimating damages to a lot caused by the construction and maintenance of a railway in the street in front of the premises, but beyond the centre line thereof, only such injuries to the property should be considered as proximately result from interference with the appurtenant easement for purposes of access, light, and air which the owner has in that part of the street.

Appeal by defendant from an order of the district court for Blue Earth county, *Severance,* J., presiding, refusing a new trial after verdict of $216 for plaintiff.

*James H. Howe, Daniel Rohrer,* and *Lorin Cray,* for appellant.

*James M. Burlingame,* for respondent.

MITCHELL, J.    The main facts in this case are the same as in *Adams* v. *Chicago, B. & N. R. Co.*, 39 Minn. 286, (39 N. W. Rep. 629,) upon the doctrine of which case plaintiff bases his right of recovery. Fourth street in the city of Mankato is, and ever since prior to 1868 has been, as plaintiff claims, a public street 80 feet wide, running northerly and southerly through the city.    The plaintiff is, and for more than six years before the commencement of this action had been, the owner and in possession of two contiguous lots (7 and 8 in block 40) in the city of Mankato, and abutting on the westerly side of Fourth street.    The defendant's predecessor and grantor, the St. Paul & Sioux City Railroad Company, in 1868, constructed the main and certain side tracks of their railway (an ordinary commercial one) upon and along the easterly half of this street, in front of plaintiff's lots; no part of the same, however, being laid west of the centre line of the street.    In 1881 the defendant succeeded to the rights of the old company, and has ever since maintained and operated these tracks for the purposes of their road, causing, as is alleged, damage and injury to plaintiff's property by reason of ashes, smoke, and cinders cast upon it by passing engines, and by the noises and jarring of passing trains, to the great annoyance and discomfort of plaintiff and his tenants.

This is in the nature of an action in trespass to recover damages for these injuries to the property.    There is no evidence that the injuries complained of are due to any improper construction or operation of the road, but, as already suggested, plaintiff rests his right to recover upon the doctrine of the *Adams Case,* that the owner of a lot abutting on a public street in a city has, as appurtenant to the lot, and independent of the ownership of the fee in the street, an easement in the street to its full width in front of his lot, for access and the admission of light and air, which constitutes property which cannot

be taken from him without compensation. It is impracticable, as well as unnecessary, to follow counsel through their elaborate discussion of their 81 assignments of error. We shall simply consider, in our own order, certain questions, the determination of which will dispose of every substantial question raised by the record.

1. But one exception is taken to the evidence of plaintiff's title to the lots referred to. It is claimed that it was error to admit a judge's "town-site" deed to plaintiff's remote grantor, without its being first shown that the judge had complied with all the requirements of statute,. and. that the grantee was the occupant entitled to the deed. This was unnecessary. It is a case where the presumption in favor of official acts obtains, that the judge did his duty in all respects. Moreover, the defendant, being a stranger to the title, was not in a position to raise the question. *Taylor* v. *Winona & St. Peter R. Co.*, *supra*, p. 66.

2. It is further claimed that there was no evidence that defendant's use of the street was unlawful; that its possession will be presumed to be lawful until the contrary appears; and that the burden was on the plaintiff to prove that it was wrongful. This proposition is sound law, but inapplicable to the facts. Plaintiff sufficiently proved that this land had been laid out, dedicated, and used as a public street, in which he would have an easement appurtenant to his abutting lots. If the street had been vacated, or if defendant had, by grant or otherwise, acquired an easement in it giving it a right to use it for railway purposes, the burden of proving the fact was on defendant. The plaintiff was no more required in this case than he would be in an action of ejectment to prove a negative by showing that the title established by a chain of record evidence had not been divested.

3. It is also claimed that it was error to prove and assess the damages to plaintiff's two lots. together. If this was a condemnation proceeding to ascertain plaintiff's compensation for taking a part of one of these lots, it may be that within the decisions of this court the lots would be considered two tracts, so that damages to the lot not taken could not be included in the award. All the cases cited by counsel are of this kind. But this is an action for a single, although contin-

uing, trespass, resulting in damage to both lots.    Had the trespass been committed by a natural person on the lots themselves, there could have been no doubt of the propriety of assessing the entire damage to the whole property, in gross.    The facts that the trespass was committed by a railway company, and in the street abutting the lots, do not change the rule.

4. A few words seem necessary to remove an apparent misapprehension of counsel as to the effect of acts of the legislature, or ordinances of cities, authorizing a railway company to construct its road on public highways or streets.    These relate solely to the public easement.    Such acts give the right as against the public, merely.    But neither the state nor any of its municipal corporations can grant private property, even for public uses, in this way.    *Gray* v. *First Div.*, *etc.*, *R. Co.*, 13 Minn. 289, (315;) *Kaiser* v. *St. Paul, S. & T. F. R. Co.*, 22 Minn. 149.    And, on the same principle, evidence that plaintiff, as a member of the city council, voted for an ordinance authorizing defendant's grantor to construct and operate its road on this street would have no sort of tendency to prove that plaintiff released any of his private property rights in the street, or that he consented to these rights being taken away or interfered with without payment of compensation.    His official vote for the ordinance is referable solely to the public easement.

5. It is also assigned as error that the court excluded a deed dated June, 1868, from plaintiff to defendant's predecessor, of the two lots abutting on the east side of the street, and immediately opposite plaintiff's lots, which contained a recital to the effect that the lots were deeded "for railway purposes and depot-grounds."    It is argued that the deed conveyed to the grantee the fee to the middle of the street, subject to the public easement, and, as against the grantor, gave the grantee the right to use and occupy the land to the centre of the street for railway purposes.    Had the deed contained an express stipulation or covenant to that effect, a quite different question would have arisen.    But a deed of the lots, although "for railway purposes and depot-grounds," cannot be construed as covenanting that the grantee might use the street, so long as it remained such, for such

purposes, so as to take away or interfere with the enjoyment of such easements as the grantor might have in it, appurtenant to other abutting property owned by him.   In so far as the deed was offered for the purpose suggested, it was properly excluded.

6. It is urged with much earnestness by the general solicitor of the defendant company in his brief, that, if plaintiff or his grantor ever had any cause of action, it accrued against the old St. Paul & Sioux City Railroad Company, in 1868, when it built these tracks in the street; that the railway is a permanent and lawful structure, which must remain; that as soon as these tracks were built, a right of recovery (if any ever existed) immediately accrued, once for all, for all damages, present or prospective, to the property; and consequently that the cause of action has long since been barred; and that, as to the lot which the plaintiff subsequently bought, he purchased it subject to defendant's easement or right to maintain its tracks where they were; and that the right of action for damages which had already accrued to his grantor did not pass by the deed to plaintiff.   It needs the citation of no authorities to sustain so plain a proposition as that a cause of action for damages for trespass to real estate will not pass by a subsequent conveyance of the land, or that, if property is subject to an easement, a grantee of the land will take it subject to the easement.   But it seems to us that counsel's position is based upon an entire misconception of the nature of the acts here complained of, as well as of this action.   If the use and occupation of this street constituted an unlawful interference with the property rights of plaintiff's grantor, then, as against him, it had no easement, but was a mere trespasser; and it would not be claimed that a purchaser of land upon which an intruder was then engaged in committing trespass, bought subject to the right of the intruder to continue his trespass.   If the use and occupation of this street were unlawful, it was a *continuing* trespass, for which repeated actions to recover damages will lie as long as the trespass is continued, until the occupancy ripens into title by prescription.   The distinction between an action for trespass and a proceeding to ascertain the compensation to be paid for the permanent taking of prop-

erty for railway purposes must be kept in mind.   This is the former, and in it only such damages can be recovered as had accrued at the date of the commencement of the action.   The payment of the verdict or judgment would give defendant no right to continue its use of the street; and if, instead of plaintiff's bringing this action, the defendant had instituted condemnation proceedings, the award of compensation would not have included damages for prior trespasses, nor would the payment of the award be a bar to an action for such damages.   *Harrington* v. *St. Paul & S. C. R. Co.*, 17 Minn. 188, (215;) *Hursh* v. *First Div., etc., R. Co.*, Id. 417, (439;) *Adams* v. *Hastings & Dakota R. Co.*, 18 Minn. 236, (260;) *Brakken* v. *Minn. & St. Louis Ry. Co.*, 29 Minn. 41, (11 N. W. Rep. 124.)

The cases cited by counsel, notably those from Illinois and Wisconsin, are not at all analogous.   They will, we think, all be found to be cases where the railroad or other company had a lawful right permanently to maintain its road or other structure as it then was, subject only to the duty to pay the injured land-owner compensation; the action, whatever its form, being in effect a substitute for condemnation proceedings, its object being to recover compensation for the permanent appropriation of property already taken.   That this was really the situation in the case of *Chicago & E. I. R. Co.* v. *Loeb,* 118 Ill. 203, (8 N. E. Rep. 460,) is apparent, especially from the separate opinion of Justice Scholfield.   The same is true of *Milwaukee & N. R. Co.* v. *Strange*, 63 Wis. 178, (23 N. W. Rep. 432,) in which state they have a statute authorizing the land-owner to initiate proceedings to have his compensation ascertained for property taken for railway purposes, and under which the courts have held that, where the owner by consent permits a railway company to enter and construct its road on his land, he waives his former remedy by action for trespass, and is relegated to his remedy under the statute referred to.   But in *Blesch* v. *Chicago & N. W. Ry. Co.*, 43 Wis. 183, where the road was built on land without the consent of the owner, and he elected (as it was held he might) to sue in trespass instead of proceeding under the statute to have compensation assessed for a permanent taking of the property, the court very clearly makes the

distinction between the two proceedings, holding that the acts of the railway company constitute a *continuing* trespass.

. 7. We are asked to reconsider and overrule our decision in the *Adams Case.* It is urged that it is against the great weight of authority, that a contrary view had been acted on so long in this state as to have become a practical rule of property, and that the rule laid down by us is resulting in serious consequences by way of unsettling titles to much railway property, and stirring up much litigation over stale claims for damages. It is also suggested that our decision was based largely upon the authority of the "Elevated Railway Cases" in New York, (*Story* v. *N. Y. Elevated R. Co.,* 90 N. Y. 122; *Lahr* v. *Metropolitan Elevated R. Co.,* 104 N. Y. 268; 10 N. E. Rep. 528,) the doctrine of which has since been held by the same court in *Fobes* v. *Rome, W. & O. R. Co.,* 121 N. Y. 505, (24 N. E. Rep. 919,) to be inapplicable to "surface roads." The decision in the *Adams Case* was the deliberate judgment of this court pronounced after exhaustive arguments by able counsel, and the most thorough and careful consideration of the case of which we were capable, and we have not since seen any reason for changing our opinion as then deliberately announced. The doctrine of that case must therefore be considered as the settled law of this state upon all questions involved therein, or which logically come within the principles there determined. Although its doctrine may be a step in advance of the general current of authorities, yet we believe it to be sound in principle, and eminently equitable in practice. The only serious objection to it (and we recognize its force) is the difficulty in applying the rule adopted by us as to the measure of damages. The temporary evils resulting from the adoption of the rule by way of inciting litigation or unsettling titles are, we think, much overestimated, and will soon pass away. We cited the *Elevated Railway Cases* because of what we deemed the inherent force and soundness of the reasoning of the opinions of the court, although we were then, and still are, unable to see how it was consistent with the doctrine of that court, announced in other cases, that the legislature had the right to authorize the construction of a railroad on a street without requiring the railway company to pay

compensation to the owners of abutting lands, provided they did not own the fee in the street.   For if the abutting owner, independently of the ownership of the fee in the street, has an easement in the street in front of his lot to the full width of it for the purposes of access, light, and air, which is property and cannot be taken from him without compensation, it is difficult for us to see what difference it makes whether the easement is taken away or its enjoyment interfered with by a railroad constructed and operated on the surface of the ground, or at an elevation above it.   As the *Fobes Case* is but the adherence of the court to its former decisions as to "surface" roads, it does not render the reasoning in the *Elevated Railway Cases* any less persuasive to our minds than it was when we considered them in connection with the *Adams Case.*

8. Upon the trial the defendant offered to prove that it was, and for more than eight years had been, the owner of the two lots immediately opposite plaintiff's lots, and abutting on the east upon the same part of Fourth street; also the provision of the charter of the city of Mankato (Sp. Laws 1868, *c.* 27, *subc.* 6, § 1) in regard to the vacation of streets; also an ordinance of the city passed in July, 1868, vacating certain streets, among others so much of Fourth street as lies east of the centre line thereof and between Plum and Elm streets, which includes that part in front of plaintiff's premises, and, in connection with this ordinance, offered to prove that it was duly submitted to and ratified by a vote of the legal voters of the city of Mankato at the time of its enactment.   Each and every part of this evidence was excluded by the court.   We have examined the record with care to ascertain, if possible, upon what ground so learned a court excluded evidence so clearly admissible, as it seems to us.   It may be that some good reason was apparent on the trial to the learned judge; but, if so, we have failed to discover it, and counsel for plaintiff have not pointed it out.   The materiality and relevancy of the facts offered to be proved are very apparent; for, if the east half of Fourth street was legally vacated, it was no longer a public highway, and neither the public nor plaintiff any longer had any easements in it.   The defendant, as the owner of the lots abutting on

it, thereafter held the fee of that part of the former street in front of its premises to the centre line, unincumbered by any such easements, and had the same right to use and occupy it as any part of its lots outside the former street line. For this error, if no other, a new trial must be granted.

Upon the argument, counsel discussed the question whether it was necessary, under the city charter, that an ordinance vacating a street should be submitted to and approved by the legal voters of the city. As a new trial must be had, in which this question may again arise, it should be considered at this time: The charter gives to the city council the care, supervision, and control of all streets within the city, and power to lay out, open, alter, and vacate public squares, highways, streets, etc., and widen and straighten the same: "provided that no right, title, or interest in or to any street, levee, park, public ground, or square in said city shall be granted, conveyed, released, or discharged by the common council of said city, unless the same shall be submitted to a vote of the legal voters of said city, and receive a majority of said voters present and voting," etc. An ordinance vacating a street, and thus giving up and releasing the entire interest of the public in it, is certainly as much within the reason of this proviso as one surrendering or releasing only a part of such interest. Such an ordinance would clearly be within the mischief intended to be guarded against. As the greater includes the less, we think such an ordinance must be submitted to and approved by the legal voters.

9. Upon the trial, the judge, in accordance with the rule laid down in the *Adams Case*, both in the admission of evidence and his instructions to the jury, held that plaintiff's recovery should be limited to the damages caused by maintaining and operating the railroad in front of his lots, and could not include any that might have accrued from maintaining or operating it on other parts of the street. He did not, however, limit the recovery to such damages as resulted from interference with access to the premises, or with the admission and circulation of air and light, but allowed to be taken into account all damages to the premises resulting generally from the maintenance and operation of the road in the street in front of them, as, for ex-

ample, noise and jarring from passing trains, which discommoded and annoyed the occupants of the premises, and thus rendered their use less valuable. This is also assigned as error. In the *Lahr Case,* 104 N. Y. 268, (10 N. E. Rep. 528,) the majority of the court did not limit the recovery, as this court did in the *Adams Case,* to damages caused by operating the road on that part of the street immediately in front of the premises, thereby avoiding the practical difficulty, under our rule, of distinguishing between damages resulting from the operation of the road in front of the premises and those resulting from its operation on either side of them. They held that the road and its intended use could not be dissected and separated, but must be considered in its entirety in considering its effect upon the property of the abutter; that, however the damage may be inflicted, provided it be effected by an unlawful use of the street, it constitutes a trespass, rendering the wrong-doer liable for the consequences of his acts. And while they predicated, as we did, the right of the abutter to recover upon the proposition that he had an easement in the street to its full width for ingress and egress to and from his premises, and also for the free passage and circulation of light and air through and over such street, for the benefit of property situated thereon, yet they did not limit the right of recovery to damages resulting from interference with access, light, and air, but extended it to any damages resulting from the unlawful maintenance and operation of the road in the street. At least, we so understand their language. The minority of the court were of opinion that, according to the fair import of the grounds upon which the *Story Case,* 90 N. Y. 122, was decided, the abutting owners were only entitled to damages for the construction and operation of the railway *in front* of their premises, resulting from the taking or destruction of their street easements of *light, air,* and *access;* and that they could not recover for anything done by the railway in the street except as it deprives them of the easements mentioned. In the *Adams Case* we adopted the limitation as to place, viz., "in front of the premises," but the question as to the elements of damage to be taken into account, and whether to be limited to such only as arise from interference with the easements of access, light, and air, was not considered or passed

v.45m.—6

upon. The whole theory, however, upon which the opinion proceeds leads logically and necessarily, as seems to us, to the conclusion that a recovery can only be had for damages resulting from the destruction of or interference with the easements of access, light, and air. The very ground-work upon which the right of recovery is based is that the abutting owner has, in the opposite half of the street, not the fee, but an easement for access, light, and air for the benefit of his premises. These are all the rights in the nature of private property which he has in that part of the street, and consequently they are the only property rights which the defendant has trespassed upon; and, if so, it would seem logically to follow that this is all for which it is liable to respond to him in damages. We are not disposed to extend the scope of the decision in the *Adams Case* beyond its fair import, and we think that, both upon principle and considerations of policy, a recovery in such cases should be limited to damages resulting to the premises from interference with access, light, and air. It follows that some of the elements of damage which the trial court permitted the jury to consider, such as the jarring of the premises, and noises made by passing trains, causing annoyance and discomfort to the occupants, ought to have been excluded.

Order reversed.

VANDERBURGH, J. I concur in the result.

NOTE. A motion for a reargument of this case was denied January 12, 1891.