CHARLES GUSTAFSON *vs.* THEODORE HAMM.

Argued Jan. 4, 1894.　Modified Jan. 30, 1894.

No. 8380.

**Crossing a street with private railroad switch track.**

The city council of St. Paul has no authority, either under 1878 G. S. ch. 34, § 47, or Sp. Laws 1889, ch. 37, to grant a license to construct and operate a purely private railroad upon or across public streets. These statutes have reference to railroads which perform the duties of common carriers, and are therefore public or quasi public in their character.

**Owner's right in the street in front of his lot.**

As the owner of a lot abutting on a street has, as appurtenant to the lot, and independently of the ownership of the fee of street, an easement in the street, to its full width, in front of his lot, for purposes of access, light, and air, which constitutes property, therefore the maintenance and operation of a railroad on any part of the street in front of his lot so as to pollute the air, and thus depreciate the rental value of the premises, constitutes a positive invasion of property rights, for which the owner may maintain a private action; and where his legal right is clear, and the nuisance or trespass a continuing one, he may maintain an action to enjoin it.

Canty, J., dissenting.

Appeal by plaintiff, Charles Gustafson, from a judgment of the District Court of Ramsey County, *Hascal R. Brill,* J., entered August 10, 1893.

The defendant, Theodore Hamm, in August, 1892, built a switch track from the Chicago, St. P., M. & O. railway tracks southwest about twenty rods to his brewery and mill in the eastern part of St. Paul. Fauquier street is sixty feet wide and runs east and west

midway between the railroad and the brewery. Hamm's switch track crosses it obliquely. Plaintiff owns a house and lot fronting north onto Fauquier street at the point where the switch track crosses it. Hamm owns the opposite lot across the street and also the lot adjacent to plaintiff's on the west. The city on June 5, 1890, by ordinance gave Hamm authority to construct and operate this switch track across the street. Plaintiff brought this action to restrain and enjoin defendant from maintaining and operating the switch track in the street in front of his lot. He obtained such judgment as to the south half of the street, but was refused as to the north half and he appeals, claiming he should be granted relief for the full width of the street in front of his lot.

*Owen Morris,* for appellant.

The city could not give permission to any one to construct or operate a purely private railroad upon or across any public street of the city. The statutes which have reference to constructing or operating railroads through or across the public streets of a city, have reference to such railroad companies as perform the duties of common or public carriers, and to such railroads as are public or quasi public in their character. A private switch not owned by the railroad company, but by individuals for their own private use, is not a public railroad. *Koelle* v. *Knecht,* 99 Ill. 396; *Mikesell* v. *Durkee,* 34 Kans. 509; *Heath* v. *Des Moines & St. L. Ry. Co.,* 61 Ia. 11; *State* v. *Inhabitants of Trenton,* 36 N. J. Law, 79; *Carli* v. *Still-water Street Ry. & T. Co.,* 28 Minn. 373.

If a railroad not touching one's premises obstructs a street abutting on or leading to them so as to cut off or materially interfere with his only access to them, the inconvenience is deemed to be special and an action lies. *Adams* v. *Chicago, B. & N. R. Co.,* 39 Minn. 286; *Brakken* v. *Minneapolis, & St. L. Ry. Co.,* 29 Minn. 41; *Lamm* v. *Chicago, St. P. & O. Ry. Co.,* 45 Minn. 71.

If there be an obstruction in the street in front of or near abutting property so as to prevent access to it, the damage which the owner sustains is different, not merely in degree but in kind, from that experienced in common with other citizens, and he may maintain a private action for the injury to him, notwithstanding there is a

remedy in behalf of the public. *Stetson* v. *Faxon*, 19 Pick. 147; *Wilder* v. *DeCou,* 26 Minn. 10; *Newell* v. *Minneapolis, L. & M. Ry. Co.*, 35 Minn. 112; *Aldrich* v. *Wetmore*, 52 Minn. 164; *Clowes* v. *Staffordshire P. W. Co.*, L. R. 8 Ch. App. 125; *King* v. *Ward*, 4 Ad. & El. 384.

The case of *Story* v. *New York El. R. Co.*, 90 N. Y. 122, was decided upon the assumption that the abutting owner did not own the fee in the street or any part thereof. In the case of *Lahr* v. *Metropolitan El. R. Co.*, 104 N. Y. 268, there was practically a reargument of the foregoing *Story* case and the court was pressed to reconsider and modify its decision, but it refused.

In *Forbes* v. *Rome, W. & O. R. Co.*, 121 N. Y. 505, it was decided that a steam railroad company which under license of the city lays its track upon the surface of the street, is not liable for damages resulting from a reasonable use thereof to the easement of an abutting lot owner who does not own the fee of the street.

Then in the case of *Lamm* v. *Chicago, St. P., M. & O. Ry. Co.*, 45 Minn. 71, this court was asked to reconsider and overrule its decision in the *Adams* case, because the New York court did not hold its doctrines as to elevated railways set forth in the *Story* case as applicable to surface railways in the *Forbes* case; but this court refused to change its decision in the *Adams* case.

*Munn, Boyeson & Thygeson*, for respondent.

Plaintiff has not suffered special or peculiar damage by reason of the construction of the track in question so as to entitle him to maintain an action to enjoin its use. He has suffered no damage not suffered by the public in general. It may differ in degree but it is of the same kind and nature. A court of equity will not interfere by injunction to correct imaginary or technical wrongs, nor where the damages suffered are slight and insignificant, but will leave the complaining party to such action as he may have for damages. *Schurmeier* v. *St. Paul & P. R. Co.*, 8 Minn. 113; *Zabriskie* v. *Jersey City & B. R. Co.*, 13 N. J. Eq. 314; *Booraem* v. *North Hudson R. Co.*, 40 N. J. Eq. 557; *Hamilton* v. *New York & H. R. Co.*, 9 Paige, 171; *Shaubut* v. *St. Paul & S. C. R. Co.*, 21 Minn. 502; *Rochett* v. *Milwaukee & St. P. Ry. Co.*, 32 Minn. 201; *Barnum* v.

*Minnesota T. Ry. Co.,* 33 Minn. 365; *Carrol* v. *Wisconsin Cent. Co.,* 40 Minn. 168; *Chicago & P. R. Co.* v. *Francis,* 70 Ill. 238; *Patterson* v. *Chicago, D. & V. R. Co.,* 75 Ill. 588; *Truesdale* v. *Peoria G. S. Co.,* 101 Ill. 561; *Railway Co.* v. *Lawrence,* 38 Ohio St. 41; *Pennsylvania R. Co.'s Appeal,* 115 Pa. St. 514.

MITCHELL, J. The relief sought in this action, as finally limited on the trial, was an injunction against defendant's maintaining and operating a railroad track across Fauquier street, in the city of St. Paul, immediately in front of plaintiff's premises. The plaintiff owned a house and lot fronting north on this street, which was the only means of access to the premises.

Defendant owned a brewery and mill about two blocks south of plaintiff's premises. The Omaha Railroad was about a block north of plaintiff's premises. Defendant had constructed an ordinary commercial railroad track from the Omaha road to his mill and brewery. This was his private track, and was used to carry in supplies to the mill and brewery, and to carry out their products. The only authority for the maintenance of this track was an ordinance of the city, assuming to grant to defendant the privilege to lay, use, and operate the same across the street. This track strikes the north side of Fauquier street directly opposite the center of plaintiff's lot, and runs thence diagonally across the street in a southwesterly direction, striking the south line of the street fifteen feet west of plaintiff's west line. It crosses the center line of the street in such a way as to occupy a small triangular piece of the south half of the street, of which plaintiff owns the fee.

This railroad track is operated with ordinary railroad freight cars and locomotives, there being, on an average, about one train a day, which takes about one minute to cross the street. These trains have been operated with reasonable care, but, when they pass, smoke and cinders are emitted and cast on plaintiff's premises, which, to some extent, pollute the air, and interfere with the enjoyment of the property, and depreciate its rental value. Plaintiff never consented to the construction of the track or the operation of trains upon it.

The trial court held that the maintenance and operation of this track on the small triangular piece of the street, of which plaintiff

v.56M.—22

owned the fee, was a continuing trespass, which he was entitled to have enjoined; but the court denied the motion of plaintiff for judgment enjoining the defendant from maintaining the track, or operating trains on and over any part of the street, to its entire width, lying immediately north and in front of plaintiff's premises. The correctness of this ruling, upon the facts stated, is the only question in the case.

1. The city had no right or authority to grant defendant a license to construct and operate a purely private railroad upon or across a public street. The provisions, both of 1878 G. S. ch. 34, § 47, and of Sp. Laws 1889, ch. 37, must be construed as having reference only to such railroads as perform the duties of public or common carriers, and which are therefore public or quasi public in their character. Even assuming that the legislature has the power to authorize the use of a public street for the purposes of a purely private railroad, it would require very clear and explicit language to that effect to warrant a court in holding that such was the legislative intention. The right to license one necessarily implies the right to license all to use the streets for such private purposes, which would render the streets well nigh impassable by the public, and amount to a perversion of them from their lawful purposes. Hence, if the defendant has the right to maintain and operate this track, he did not acquire it under this ordinance. *State* v. *Inhabitants of Trenton*, 36 N. J. Law, 79; *Mikesell* v. *Durkee*, 34 Kan. 509, (9 Pac. 278;) *Heath* v. *Des Moines, St. L. Ry. Co.*, 61 Iowa, 11, (15 N. W. 573;) *Mayor, etc.*, v. *Harris*, 75 Ga. 761; Dill. Mun. Corp. (4th Ed.) § 710, note 2.

2. That the construction and operation of any ordinary commercial railroad on a street is the imposition of an additional servitude, and amounts to a perversion of the street to a use for which it was not intended, which the state or municipality cannot, as against private rights, authorize, the decisions of this court are explicit. *Carli* v. *Stillwater Street Ry. & T. Co.*, 28 Minn. 373, (10 N. W. 205;) *Adams* v. *Chicago, B. & N. R. Co.*, 39 Minn. 286, (39 N. W. 629.)

If this is so as to a public railroad, it certainly must be so as to a purely private one.

It is merely begging the question to say that defendant, as the owner of the fee of the north half of the street, has the right to use

it for any purpose not inconsistent with the public easement. The private right is always subordinate to the public right, and subject to all the limitations and abridgements caused by the exercise of the latter; and hence cannot extend to any use which amounts to a perversion of the street from the uses for which it was intended.

The right of an abutting owner, under certain municipal regulations, to use a part of the street for areas, for purposes of access to basements, for the temporary storage of building material, for laying underground pipes to connect with water and gas mains, stands on a different principle. These are all really included in the general right to use a street for purposes of access to the abutting premises, and have been long sanctioned as legitimate street uses. It is not necessary to consider here just what is the precise limit to the uses to which an abutting owner may put a street for purposes of access to his premises.

It is at least certain that he cannot use the street in any way or for any purpose that amounts to a perversion of it, or to an invasion upon the private right of property of another in the part of the street so used; and this is as far as it is necessary to go for present purposes.

It is the settled doctrine of this court that the owner of a lot abutting on a public street has, as appurtenant to the lot, and independently of the ownership of the fee in the street, an easement in the street, to its full width, in front of his lot, for the purposes of access, light, and air, which constitutes property. *Adams* v. *Chicago, B. & N. R. Co.*, 39 Minn. 286, (39 N. W. 629;) *Lamm* v. *Chicago, St. P., M. & O. Ry. Co.*, 45 Minn. 71, (47 N. W. 455.) The act of defendant in maintaining and operating this track on any part of the street, to its full width, in front of plaintiff's premises, so as to pollute the air, and depreciate their value, was, if not a trespass, at least a nuisance, which amounted to a positive invasion upon plaintiff's private property rights, and for which he may maintain a private action.

The legal right being clear, and the trespass or nuisance, whichever it be, being a continuing one, he is not confined to successive actions for damages, but may maintain an action to enjoin the constantly recurring grievance; and, where a clear legal right is thus violated, the fact that the actual damages, if substantial, are comparatively small, is not important.

Cause remanded, with directions to the court below to amend the judgment in accordance with plaintiff's request.

CANTY, J., (dissenting.) I dissent. The majority of the court decide the case mainly on the authority of *Adams* v. *Chicago, B. & N. R. Co.*, 39 Minn. 286, (39 N. W. 629,) and on the principle there laid down as follows: "The conclusions arrived at are that the owner of a lot abutting on the street has, independent of his fee in the street as appurtenant to his lot, an easement in the street in front of his lot to the full width of the street, for admission of light and air to his lot, which easement is subordinate only to the public right."

The court added to this an easement for access, and this case was approved in the case of *Lamm* v. *Chicago, St. P., M. & O. Ry. Co.*, 45 Minn. 71, (47 N. W. 455.) I am willing to go even further than the court did in those cases in sustaining the rights of the abutting owner to an easement in the whole width of the street, but still I think that those cases do not apply to or control this case.

The principle there laid down is mainly on the authority of the Elevated Railway Cases. *Story* v. *New York Elevated R. Co.*, 90 N. Y. 122, and *Lahr* v. *Metropolitan E. R. Co.*, 104 N. Y. 268, (10 N. E. 528.) That principle was not there applied to an ordinary commercial railway at all, but to a mere street railway, which was not of itself an additional servitude on the street, but the permanent structures built to support it were. It was there conceded by the court that if it had been a surface road it would not be an additional servitude, though operated by steam. In the *Story* Case the road was to be constructed upon a series of columns set in the outer edge of the sidewalk, on each side, carrying great girders for the support of cross-ties for three sets of rails, fifteen feet above the street. The structure divided the street into a sort of basement, used by the general public and abutting owners, and a first floor, used exclusively by the railroad company. The court compared the structure to the illegal erection in the street of the house in the case in 6 Johns. Ch. 439, (*Corning* v. *Lowerre*,) and of the freight depot in 94 U. S. 324, (*Barney* v. *Keokuk*.) In the *Lahr* Case the elevated road was similar. It is not, in these cases, claimed that the generating of gas, steam, and smoke, and the distribution of cinders, dust, and ashes by a street railway is necessarily an additional servitude on the

street, except as it is aggravated by the height from which it is thus distributed and thrown down upon the street. A street railway is not an additional servitude, though operated by steam, *Newell* v. *Minne polis, L. & M. Ry. Co.*, 35 Minn. 112, (27 N. W. 839;) while an ordinary commercial railway is, though run by horse power, *Carli* v. *Stillwater Street Ry. & T. Co.*, 28 Minn. 373, (10 N. W. 205.) Yet the former will deprive the abutting owner of much more light and air than the latter. It is lawful to move a house on the street, (*Graves* v. *Shattuck*, 35 N. H. 262,) though it deprives the owner of much more light and air than any railroad train. Unless prohibited by some statute or ordinance, it is held that it is not unlawful to run a traction steam engine on a public highway. *Macomber* v. *Nichols*, 34 Mich. 212. What is an additional servitude does not at all depend on the amount of space it necessarily occupies, or the amount of light and air it necessarily excludes, in passing along the street. The street belongs to the local public. In a city, that would include perhaps all the adjacent country tributary to the city by the ordinary highways, and, if the railroad is "in aid of the street," does not destroy its ordinary and usual uses, and does not collect and converge on one street the traffic from any other or greater territory, it is not an additional servitude, no matter how much light and air it necessarily excludes by its moving appliances. If a railroad is not "in aid of the street," or collects and converges on the street traffic from any greater territory, it is an additional servitude, no matter how little light and air it excludes. I think the abutting owner should have the same right to object to an additional servitude on the opposite side of the street as on his own side, without regard to any mere question of light, air, or access.

The old theory that the abutting owner could only object to such additional servitude when it encroached on his fee in the street was found to be too narrow, too easily evaded, and no protection to his real rights in the street. Neither do I think that the theory of an easement in the opposite half of the street for light, air, and access merely is a proper test of his rights.

When the abutting owner dedicates his own half of the street, it is in consideration that the owner opposite and the owners on each side of him will do likewise, and it should be held on broad principles that he has, appurtenant to his premises, an easement in the street,

not only to the whole width thereof, but also, at least, immediately on each side of his premises.    When his land is taken for a street by condemnation proceedings, the same easement is created for him, and the benefit of it to him taken into consideration in assessing his damages.    In my opinion, this easement exists not only for the purposes of light, air, and access, but also for all purposes that are beneficial to his premises, and not inconsistent with the rights of the public and the private rights of the other abutting owners in the street, and cannot be taken from or interfered with by any additional servitude in the street.

But the right of a railroad to cross the street is a very different question.    No one has a right to draw a line on the face of the earth, and, as if it were a Chinese wall, prohibit intercourse across it, whether that intercourse be by railroad or otherwise.

Now, suppose that the side track of an ordinarily commercial railroad is laid in the street, on the abutting owner's side, up to the line of his fee, and there terminates, would he not have just as much right to object as if it were laid in front of his premises on the opposite side of the street?    I think he would.

But supposing, on the other hand, that a railroad crossed the street at the same point, running close to, but not encroaching on, his fee in the street, would he have a right to object?    Certainly not, unless his access to the street was completely cut off, and not merely interfered with.    See *Adams* v. *Chicago, B. & N. R. Co.*, 39 Minn. 288, and cases there cited.    He would be in the same condition, and subject to the same annoyances, as any other man whose land adjoined that of his neighbors, which had been taken for railroad purposes.    Neither does it make any difference whether the railroad crosses at right angles to the line of the street or in a slightly oblique direction.    Natural obstacles and other causes often make it necessary to cross in a slightly oblique direction.    The abutting owner has no greater rights in the street immediately in front of his fee therein than he has immediately by the side of his fee therein, and the railroad may take either or both in so crossing the street, if it does not encroach on that fee.

The sole and exclusive owner of one avenue of public traffic has no vested right that another shall not cross his.    That his rights are prior is immaterial.

When a highway or a new railroad is laid out across the track of an old one, the damages for the cross easement to be awarded to the owner of such old railroad are not assessed on the same principles as are applied in favor of the owner of the fee. In determining the compensation to be paid for such cross easement it is generally held that the value of the land in the cross section covered by such cross easement, and the cost of restoring the crossing, are substantially all that should be considered. The damages to the rest of the track or right of way of the old railroad, whether immediately adjacent to such cross easement or more remote, are not considered; neither are the interruptions or inconveniences occasioned to the old company's business, or any other element of collateral or consequential damage. Lewis, Em. Dom. §§ 489, 491.

Then, if the right of the defendant to lay his private track across the street is to be measured by the right to lay the track of an ordinary commercial railroad in the same place, without paying damages to plaintiff, I think that defendant's right must be sustained, notwithstanding the *Adams* Case and the *Lamm* Case.

But it seems to me, whether we look at it as a question of what are the rights of the public in the street as against abutting owners, or as a question of what are the rights derived through the public, or acquired in connection with it, of one abutting owner as against the other, the judgment of the court below should be sustained. The court below found that defendant is the owner of all the land or the fee of all the land over which the track passes, except the two or three feet of the corner of plaintiff's fee in the street from which he orders the track removed. Then, what are the private rights of an abutting owner in his own fee in the street?

"By the location of a way over the land of any person the public have acquired an easement which the owner may not lawfully extinguish, or unreasonably interrupt; but the soil remains in the owner, although incumbered with a way. And every use to which the land may be applied, and all profits which may be derived from it consistently with the continuance of the easement, the owner can lawfully claim." *Perley* v. *Chandler*, 6 Mass. 456.

This principle is elementary, and too well established to need the citation of authorities. The question to be particularly discussed is, what are the limits of the private uses to which the owner may

apply it? The same case further states: "Upon these principles, there can be no doubt but that the owner of the land can sink a drain or any water course below the surface of his land, covered with a way so as not to deprive the public of their easement; and a common practice for the owners of water mills or of sites for water mills is to sink water courses for the use of their mills in their own land under highways, care being taken to cover the water courses sufficiently so that the highways remain safe and convenient for passengers." Page 457.

"If a highway be located over a water course, either natural or artificial, the public cannot shut up these courses, but may make the road over them by the aid of bridges. But when a way has been located over private lands, if the owner should afterwards open a water course across the way, it will be his duty at his own expense to make and keep in repair a way over the water course for the convenience of the public." Page 458.

The owner of land adjoining a highway may place building material on it for the purposes of erecting a building. *Palmer* v. *Silverthorn*, 32 Pa. St. 65.

It was held in *Chamberlain* v. *Enfield*, 43 N. H. 356, that in such a case a pile of lumber on the side of the highway, seventy five feet long, from six to eleven feet wide, and from four to six feet high, as testified to by different witnesses, was not necessarily unlawful. It is hardly necessary to multiply illustrations of such private uses of the street by the abutting owner.

It seems to me that the principle involved in these cases warrants the conclusion that this private right of access to and from the street, and across the street from one part of the abutting owner's premises to the other, is not necessarily unlawful or necessarily a nuisance *per se* though carried on by means of a railroad track, cars, and steam engine. When such private right of access exists, the fact that it is exercised by means of improved appliances does not necessarily make it unlawful. As I have tried to show, the principal test of what is an additional servitude on the street is not that the traffic is carried on by such improved appliances, but it is the volume of traffic collected and converged on the street, and that such traffic comes from territory which could not be tributary to such street by any system of ordinary highways, however laid out and improved.

The principle can be used to illustrate this case. It appears that nothing is carried on this track but what would be ordinarily carried in wagons over the same route, for the same purposes, if the track was not there. Such private switch tracks are a very common means of access to mills, foundries, machine works, breweries, and other manufacturing establishments; and to hold that they cannot be laid across a street is a serious matter, and will leave the proprietors of such establishments without remedy, as it is generally held that no right of way can be condemned for such private purposes.

The right to use such improved appliances for private access does not depend upon any ordinance. It is a right which undoubtedly the city council can regulate and limit to a very considerable extent, but cannot create.

Neither do I question the fact that the circumstances may be such that maintaining and operating such a private track would be a nuisance. I simply claim that it is not a nuisance *per se,* and that the facts found in this case do not prove it to be a nuisance.

If it were maintained in a thickly settled or highly improved residence or retail portion of the city, it would be; but if in a wholesale or manufacturing district, it might not be. It would be a question of fact to be decided in each case.

In this case it does not appear what kind of a district this is. Nothing appears as to the character of the locality, except that defendant has buildings and improvements and a mill and brewery the width of one street and one hundred and thirty five feet from the rear of plaintiff's lot, and that there is a dwelling house on plaintiff's lot. It nowhere appears that there are any other buildings or improvements in the vicinity. Thus, for the purposes of this case, we must hold that there are no other improvements anywhere in the vicinity. True, it is found that "the operating of trains over said track somewhat depreciates the value of plaintiff's property, and lessens the rental value thereof;" but that is not sufficient. 1 Wood, Nuis. (3d Ed.) § 2.

I think the judgment of the court below should be affirmed.

(Opinion published 57 N. W. Rep. 1054.)