MINNEAPOLIS, ST. P., R. & D. ELECTRIC TRACTION CO. v.
SEARLE.

(Circuit Court of Appeals, Eighth Circuit. September 23, 1913.)

No. 3,882.

(Syllabus by the Court.)

1. EMINENT DOMAIN (§ 119*) — EASEMENT IN STREETS — STREET RAILWAYS —
RIGHT TO COMPENSATION.
    The construction and operation of a commercial railroad across a city·
street in Minnesota in front of a lot abutting thereon infringes the pri-
vate easement of the owner of the lot 'in the street to its full width in
front of his lot for the purposes of access, light, and air, imposes an ad-
ditional servitude upon his lot, constitutes a taking of or damage to his
property, and entitles him to compensation therefor.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–
314; Dec. Dig. § 119.*]

2. EMINENT DOMAIN (§ 119*) — EASEMENT IN STREETS — STREET RAILWAYS —
RIGHT TO COMPENSATION.
    The construction and operation of such a railroad across such a street
does not fall within the limits of the public highway or street easement,
but is inconsistent with the proper use thereof, and neither the Legisla-
ture nor the city can, by contract with or grant to the constructing or
operating company, deprive the owner of the lot of his easement, or of
his right to recover compensation for its impairment or destruction.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–
314; Dec. Dig. § 119.*
    Eminent domain, consequential and indirect damages, see note to High
Bridge Lumber Co. v. United States, 16 C. C. A. 468.]

Appeal from the District Court of the United States for the Dis-
trict of Minnesota; Charles A. Willard, Judge.

Action by George W. Searle against the Minneapolis, St. Paul,
Rochester & Dubuque Electric Traction Company. From a judgment
for plaintiff, defendant appeals. Affirmed.

M. H. Boutelle, of Minneapolis, Minn. (R. T. Boardman, of Minne-
apolis, Minn., on the brief), for appellant.

Charles R. Pye, of Northfield, Minn., for appellee.

Before SANBORN and CARLAND, Circuit Judges.

SANBORN, Circuit Judge.   This appeal assails a decree of the
court below to the effect that the Traction Company pay to George
W. Searle $1,000 damages for the construction and operation of its
railroad diagonally across Linden street, in the city of Northfield,
Minn., in front of his residence, and in large part upon that part of
his lot covered by the street.   The railroad which the Traction Com-
pany was building was a commercial, as distinguished from a street,
railway.   The city of Northfield had granted to it the right to lay and
operate its railroad across Linden street at the  place and in the way
in which it was doing, on condition that this grant should not af-
fect the rights of individual property holders.   Searle brought suit to
enjoin the construction and operation of the railroad.   The company

answered and filed a cross-bill for an injunction against interference by Searle, and prayed that if that injunction should be denied the court should assess the damages for the crossing. The facts in the case were stipulated, and the court assessed the damages and held that Searle was entitled to recover them. No complaint of the amount of these damages is made, and the only question here is whether the damage resulting to the owner of a lot by the careful construction and operation of a commercial railroad across a street in front of his lot imposes an additional servitude thereon and constitutes a legal injury, or is such a public use of the street for one of the purposes for which it was dedicated that it is damnum absque injuria. Both parties concede that this is a question of local law, and that, if it has been answered by the decisions of the Supreme Court of Minnesota, that answer is decisive of this case. Counsel for the Traction Company, however, persuasively argue that the Minnesota court has never directly answered it, and that it is the duty of this court to hold under general principles that the crossing of a street by a commercial railroad in front of a lot imposes no additional servitude thereon.

Conceding, but not admitting, that the Supreme Court of Minnesota has never expressly decided that such a crossing by a public corporation imposes an additional servitude upon the lots in front of which it is made, has it not announced and adhered to rules of law which demonstrate that such is its opinion, and that this opinion will inevitably be declared whenever the question is squarely presented to it for determination? For, as this is a question of local law, regarding which it is the duty and pleasure of this court to follow the decisions of the Supreme Court of Minnesota, it is the part of wisdom, if the decisions of that court clearly show what its answer to this question will be when it is squarely presented, to so answer it now that the answer of this court will be in harmony with that of the Supreme Court of Minnesota.

[1, 2] It has been the settled law of Minnesota since 1868 that the construction and operation of a commercial railroad upon and along the streets of a city did not fall within the public highway or street easement, but imposed an additional servitude upon abutting lots for which their owners could recover damages. Gray v. First Division of St. Paul & Pacific R. R. Co., 13 Minn. 315 (Gil. 289); Harrington v. St. Paul & Sioux City R. R. Co., 17 Minn. 215 (Gil. 188); Carli v. Stillwater Street Railway & Transfer Co., 28 Minn. 373, 376, 10 N. W. 205, 41 Am. Rep. 290. Judge Berry, who delivered the first opinion of the Supreme Court to this effect, while discussing and applying the principle upon which that decision rests in Newell v. Minneapolis, Lyndale & Minnetonka Ry. Co., 35 Minn. 112, 114, 27 N. W. 839, 840 (59 Am. Rep. 303), said:

"The public easement in a public street is the public and common right to use the same for the passage of persons and things, and for purposes incidental thereto. The exercise of this right is subject, in some degree, to regulations to be made by the proper authorities. The ownership of the soil on which the street is laid being absolute, subject only to the street easement, the owner has the right to insist that the street shall be used and enjoyed for the legitimate purposes of its creation and existence, and for no others. * * * Thus, for instance, an ordinary railroad, constructed and

operated in and along a street, though it is used for the passage of persons and property, and is therefore, so far as this general nature of its business is concerned, using the street for proper street purposes, yet the mode of its construction or operation, or both, are such as to monopolize the street, and virtually and practically exclude the general public from its legitimate use. So that the use of the street for such railroad is inconsistent with the common and public use of it, in which every person is entitled to share, and hence it is held to be the imposition upon the soil of a servitude differing from, and additional to, that of the proper and lawful street easement. The case of an ordinary street railway is otherwise. * * * So that when a street is being used for the purpose (legitimate in its general nature) of the passage of persons and property, but objection is made to the mode of use, the question of rightfulness depends upon whether the use objected to is consistent or inconsistent with the common public use, in which every person is entitled to share."

In Adams v. Chicago, Burlington & Northern R. Co., 39 Minn. 286, 295, 39 N. W. 629, 1 L. R. A. 493, 12 Am. St. Rep. 644, and in Lamm v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 45 Minn. 71, 78, 47 N. W. 455, 10 L. R. A. 268, the Minnesota court after twice hearing and considering elaborate arguments of the question, decided that the construction and operation of a commercial railroad on one-half of a street was the taking of the property of. an owner of a lot on the opposite side of the street, who was also the owner of the fee of the land in front of his lot to the middle line of the street, subject to the public highway easement, because it was an impairment of his individual easement in the street in front of his lot to the full width of the street for the purposes of access, light, and air. In the Adams Case that court stated its conclusions, to which it adhered in no uncertain terms in the Lamm Case, in these words:

"The conclusions arrived at are that the owner of a lot abutting on a public street has, independent of the fee in the street, as appurtenant to his lot, an easement in the street in front of his lot to the full width of the street, for admission of light and air to his lot, which easement is subordinate only to the public right; that depriving him of, or interfering with his enjoyment of, the easement for any public use not a proper street use is a taking of his property within the meaning of the Constitution; that appro- priating a public street to the construction and operation of an ordinary commercial railroad upon it is not a proper street use; that where, without his consent and without compensation to him, such a railroad is laid and operated along the portion of the street in front of his lot, so as upon that part of the street to cause smoke, dust, cinders, etc., which darken or pollute the air, coming from that part of the street upon his lot, he may recover whatever damages to his lot are caused by so laying and operating such rail- road on that part of the street."

It is true, as counsel for the company point out, that these cases were actions for damages for trespass, and not for full compensation for the taking of the property in the plaintiff's easements; but the basic question was whether or not the owners of the lots had private easements to the full width of the streets, which were infringed by the construction and operation of a commercial railroad on the side of the street more remote from the lots, and that question condi- tioned alike the plaintiff's rights to recover compensation for the taking and damages for the trespasses.

In Cater v. Northwestern Telephone Exchange Co., 60 Minn. 539, 545, 63 N. W. 111, 113 (28 L. R. A. 310, 51 Am. St. Rep. 543) the

Supreme Court of Minnesota held that the construction and operation of a telephone line along the side of a country highway was not such an impairment of the easement of the owner of the abutting lot in the highway as to constitute a legal injury; but in the opinion in that case Judge Mitchell, who wrote the opinion in the Lamm Case, said:

"This court has held, in common with the great majority of courts, that an ordinary commercial railroad imposes an additional servitude on a street, and we applied a test as to what did and did not constitute an additional servitude. As far as it went, and as applied to such a case, the test was doubtless correct; but, after all, the bottom fact upon which the decision really rests was that such an appropriation of a street was practically subversive of its use by the public in the ordinary way, and also unreasonably impaired the special easements of abutting owners."

In Gustafson v. Hamm, 56 Minn. 334, 338, 339, 57 N. W. 1054, 1055 (22 L. R. A. 565) the Minnesota court, at the suit of the owner of a lot abutting on a street in St. Paul, sustained an injunction against the construction and operation of a commercial railroad across the street in front of his lot by a private party to whom the city, by the terms of an ordinance, had granted this privilege. The decision was placed on two grounds: (1) That the city had no power to grant such a privilege to a private party; and (2) that the construction and operation of the railroad infringed the plaintiff's easement in the street for the purposes of access, light and air. On the latter subject the court said:

"That the construction and operation of any ordinary commercial railroad on a street is the imposition of an additional servitude, and amounts to a perversion of the street to a use for which it was not intended, which the state or municipality cannot, as against private rights, authorize, the decisions of this court are explicit. Carli v. Stillwater Street Ry. & T. Co., 28 Minn. 373, 10 N. W. 205 [41 Am. Rep. 290]; Adams v. Chicago, B. & N. R. Co., 39 Minn. 286, 39 N. W. 629 [1 L. R. A. 493, 12 Am. St. Rep. 644]. *  *  * It is the settled doctrine of this court that the owner of a lot abutting on a public street has, as appurtenant to the lot, and independently of the ownership of the fee in the street, an easement in the street, to its full width, in front of his lot, for the purposes of access, light, and air, which constitutes property. Adams v. Chicago, B. & N. R. Co., 39 Minn. 286, 39 N. W. 629 [1 L. R. A. 286, 12 Am. St. Rep. 644]; Lamm v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 71, 47 N. W. 455 [10 L. R. A. 268]. The act of defendant in maintaining and operating this track on any part of the street, to its full width, in front of plaintiff's premises, so as to pollute the air, and depreciate their value, was, if not a trespass, at least a nuisance, which amounted to a positive invasion upon plaintiff's private property rights, and for which he may maintain a private action."

There are other decisions not unworthy of perusal, but less pertinent to this decision (Schurmeier v. St. Paul & Pacific R. R. Co., 10 Minn. 82 [Gil. 59] 88 Am. Dec. 59; Adams v. Hastings & Dakota R. R. Co., 18 Minn. 260 [Gil. 236]; Hartz v. St. Paul & Sioux City R. R. Co., 21 Minn. 358; Kaiser v. St. Paul, Stillwater & Taylors Falls R. R. Co., 22 Minn. 149; Robinson v. Great Northern Ry. Co., 48 Minn. 445, 51 N. W. 384; Brakken v. Minneapolis & St. Louis Ry. Co., 29 Minn. 41, 11 N. W. 124; City of International Falls v. Minnesota, D. & W. Ry. Co., 117 Minn. 14, 20, 134 N. W. 302; Shaubut v. St. Paul & Sioux City R. R. Co., 21 Minn. 502; Rochette

v. Chicago, Milwaukee & St. Paul Ry. Co., 32 Minn. 201, 20 N. W. 140; Carroll v. Wisconsin Central R. R. Co., 40 Minn. 168, 41 N. W. 661), but none inconsistent with those which have been reviewed.

The reading and careful consideration of the opinions of the Supreme Court of Minnesota to which reference has been made, have persuaded that they sustain these propositions: The owner of a lot abutting on a public street in Minnesota has, as appurtenant to the lot, an easement in the street to its full width in front of his lot, for the purposes of access, light, and air, which constitutes property. The construction and operation of a commercial railroad upon such a street in front of the lot does not fall within the limits of the public highway or street easement, but is inconsistent with and a perversion of the use of that easement, which infringes the easement of the owner of the abutting lot, takes or damages his property, and inflicts upon him a legal injury. As such construction and operation do not fall within the public street easement, neither the state nor the city can, by contract with or grant to the railway company, deprive the owner of the abutting lot of his right to recover for the taking or damage to his easement caused thereby. Gray v. First Division of St. Paul & Pacific R. R. Co., 13 Minn. 315, 319, 320 (Gil. 289); Revised Laws of Minnesota, § 2916; Kaiser v. St. Paul, Stillwater & Taylors Falls R. R. Co., 22 Minn. 149, 151, 152; Lamm v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 45 Minn. 71, 75, 47 N. W. 455, 10 L. R. A. 268. And since the construction and operation of a commercial railroad across a street in front of a lot unavoidably infringes, no less than its construction and operation along the street on its farther side, the easement of the owner of the lot in the street in front of it to its full width for the purposes of access, light, and air, the decisions of the Supreme Court of Minnesota have convinced that it is the fixed opinion of that court that such a construction and operation imposes an additional servitude upon the lot, takes or damages the property of the owner, and legally entitles him to full compensation therefor.

This was the opinion of the court below, and its decree must therefore be affirmed.

It is so ordered.