GEORGE K. ADAMS *vs.* CHICAGO, BURLINGTON & NORTHERN RAILROAD COMPANY.

October 15, 1888.

**Street—Easement of Abutting Owner in Addition to Ownership of Fee.** —The owner of a lot abutting on a public street in a city has, as appurtenant to the lot, and independent of the ownership of the fee of the street, an easement in the street to the full width thereof, in front of the lot, for admission of light and air to his lot, which easement is subordinate only to the public right in the street.

**Same—What Amounts to a "Taking" of such Easement.**—Depriving him of, or materially interfering with his enjoyment of the easement, for any public use not a proper street use, is a taking of his property for public use within the meaning of the constitution.

**Same—Use of Street by Railroad.**—Appropriating a public street to use for an ordinary commercial railroad is not a proper street use.

Same — Smoke, etc., from Trains — Abutter's Right to Damages.—
Whenever without his consent, and without compensation to him, such a
railroad is laid and operated along the portion of the street in front of his
lot so as upon that part of the street to cause smoke, dust, cinders, etc.,
which darken and pollute the air coming upon the lot from that part of
the street, the lot-owner may recover whatever damages to his lot are
thus caused by so laying and operating the railroad.

Same—Measure of Damages.—A new trial of the issue as to amount of
damages ordered, unless plaintiff consent to take judgment for nominal
damages merely.

Appeal by defendant from an order of the district court for Winona
county, refusing a new trial after a trial by *Start, J.,* a jury being
waived.

*Wm. Gale, J. W. Losey,* and *Young & Lightner,* for appellant.
*Tawney & Randall,* for respondent.

GILFILLAN, C. J.    Second street, in the city of Winona, is, and for
30 years has been, a public street, 70 feet wide, running nearly east
and west through the city.    Plaintiff is the owner of and occupies as
his residence a lot abutting on the south side of said street.    The de-
fendant, under authority of the common council, which authority the
city charter empowered the council to give, has constructed and is
operating the main line of its railroad, an ordinary commercial rail-
road, running to and through Winona, upon and along the north half
of Second street, passing in front of plaintiff's lot, no part of the
track being laid south of the centre line of the street.    Safe and con-
venient ingress and egress to and from plaintiff's lot are not ma-
terially impaired.    The injurious consequences to the lot are not due
to any improper construction or operation of the road, but are such
as result from constructing and operating a railroad along a street in
an ordinary and prudent manner.    These injurious consequences
arise from the engines and trains passing day and night, and throw-
ing steam, smoke, dust, and cinders upon the plaintiff's premises,
and into his house, polluting the air with offensive smells, and inter-
fering with the free circulation of light and pure air into and upon
his premises, and jarring the ground so as to cause the house and
furniture to vibrate; causing physical discomforts and annoyances to

plaintiff and his family, and whereby the rental value of his premises is diminished. The court below ordered judgment for the plaintiff for the damage to the rental value up to the commencement of the action, and the defendant appeals.

The principal question involved has never been directly before this court. There have been, however, cases in which the decisions bore incidentally upon it. It is well settled that where there is no taking of, or encroachment on, one's property or property rights by the construction and operating of a railroad, any inconveniences caused by it, as from noises, smoke, cinders, etc., not due to improper construction, or negligence in operating it, furnish no ground of action; as when the railroad is laid wholly on land which the company has acquired by purchase or condemnation, or in which the party has no interest, so that it does no wrong to him in constructing and operating the road, though there may be some inconvenience or damage to him arising from it, if it be such as the general public suffer, he has no legal cause to complain. Railroads are a necessity, and the public, which enjoys the general incidental benefits from them, must endure any general inconveniences necessarily incident to their construction and operation. And if a railroad company even wrongfully obstructs a street abutting on one's premises, not at the part of the street where it so abuts, unless access to his premises is thereby cut off or materially interfered with, any inconvenience that he may suffer therefrom furnishes no ground for a private action, because the wrong done is a public wrong for which the public authorities are the proper parties to seek redress. See *Shaubut* v. *St. Paul & Sioux City R. Co.*, 21 Minn. 502; *Rochette* v. *Chicago, Mil. & St. Paul Ry. Co.*, 32 Minn. 201, (20 N. W. Rep. 140;) *Barnum* v. *Minnesota Transfer Ry. Co.*, 33 Minn. 365, (23 N. W. Rep. 538.) But if a railroad, not touching one's premises, obstructs a street abutting on or leading to them, so as to cut off or materially interfere with his only access to them, the inconvenience is deemed to be special, and not one common to the public, and an action lies. *Brakken* v. *Minn. & St. Louis Ry. Co.*, 29 Minn. 41, (11 N. W. Rep. 124.) It is the same where one owns land abutting on a navigable river or lake, and a railroad is laid along between the land and the navigable water. *Brisbine* v. *St. Paul*

& *Sioux City R. Co.*, 23 Minn. 114; *Union Depot, etc., Co.* v. *Brunswick*, 31 Minn. 297, (17 N. W. Rep. 626.) And also where a strip between the lots and the river has been dedicated to public use as a levee or landing, and a railroad is laid upon it. *Schurmeier* v. *St. Paul & Pac. R. Co.*, 10 Minn. 59, (82,) (88 Am. Dec. 59.) Where, however, there is a taking of a part of a tract or lot of land, the diminution in value of the part not taken, caused by the noise of passing trains, and inconvenience and interruption to the use of the part not taken, resulting from the ordinary operation of the road, (*County of Blue Earth* v. *St. Paul & Sioux City R. Co.*, 28 Minn. 503, 11 N. W. Rep. 73;) and from increased exposure of buildings already erected to danger of fire from passing trains, (*Colvill* v. *St. Paul & Chicago Ry. Co.*, 19 Minn. 240, (283;) *Johnson* v. *Chicago, B. & N. R. Co.*, 37 Minn. 519, 35 N. W Rep. 438;) and from increased danger of injury to or destruction of the household of the owner, unless the property not taken is equally valuable for some other purpose,— *Curtis* v. *St. Paul, S. & T. F. R. Co.*, 20 Minn. 19, (28,)—are proper elements of the damages to be allowed for the taking.

From these decisions the propositions may be stated: That the right of recovery against a railroad company, when there is no improper construction of or negligence in operating the railroad, for inconveniences caused by noises, smoke, dust, and cinders, does not depend on the fact that such inconveniences exist, if they be such as are common to the public at large, but on the fact that there has been a taking of the parties' property for the purpose of the railroad, accompanied with such inconveniences, or to which they are incident; and, if necessarily caused by the company's proper use of its own property, there can be no recovery because of them. And that, where there is a taking, such inconveniences as are necessarily incident to it, and to the use for which the property is taken, are proper elements of the damages to the party. And this further proposition (fully established and more clearly set forth in many other decisions of this court) that the rule of damage is applied only to a case where part of a distinct tract or lot is taken, in which case the damages only to the part not taken are to be estimated. As to that only are the damages deemed special. As to other distinct tracts or lots of

the same owner the inconveniences are generally such as the public suffer.

As the plaintiff does not claim to own the land in the street which the company has taken for its road, but claims only a right or interest in the nature of an easement in it appurtenant to his lot, the question has been raised and discussed, at considerable length, whether, conceding the right or interest he claims, the acts of the defendant constitute a taking, within the constitutional provision prohibiting the taking of private property for public use without just compensation. As that provision is inserted for the protection of the citizen, it ought to have a liberal interpretation, so as to effect its general purpose. All property, whatever its character, comes within its protection. It is hardly necessary to say that any right or interest in land in the nature of an easement is property, as much so as a lien upon it by mortgage, judgment, or under mechanic's lien laws. If a man is deprived of his property for the purpose of any enterprise of public use, it must be a taking, even though the right of which he is deprived is not and cannot be employed in the public use. In the case of a lien on land taken for railroad purposes, the company cannot make any use of the lien. It does not succeed to the ownership of it. It merely displaces it,—destroys it. So, in case of an easement. If A. has, as appurtenant to his lot, an easement for right of way over the adjoining land, and such adjoining land is taken for railroad purposes, the company does not and cannot succeed to the easement. But it may destroy or materially impair it by rendering it impossible for the owner of it to enjoy it to the full extent that he is entitled to. Such destruction or impairment is within the meaning of the word "taken," as used in the constitution, as fully as is the depriving the owner of the possession and use of his corporeal property.

The main question in the case is, has the owner of a lot abutting on a public street a right or interest in the street opposite his lot, as appurtenant to his lot, and independent of his ownership of the soil of the street, and, if so, what is that right or interest? If he has, and the acts of the defendant in constructing and operating its railroad along that part of the street opposite plaintiff's lot prevent or impair

his enjoyment of such right or interest, then he has a right to recover.

We find a great many cases in which is stated, in general terms, the proposition that, although the fee of the street be in the state or municipality, the owner of an abutting lot has, as appurtenant to his lot, an interest or easement in the street in front of it, which is entirely distinct from the interest of the public. *Grand Rapids & Ind. R. Co.* v. *Heisel*, 38 Mich. 62; *Lexington & Ohio R. Co.* v. *Applegate*, 8 Dana, 289, (33 Am. Dec. 497;) *Elizabethtown, etc., R. Co.* v. *Combs*, 10 Bush. 382; *Haynes* v. *Thomas*, 7 Ind. 38; *Protzman* v. *Indianapolis, etc., R. Co.*, 9 Ind. 467, (68 Am. Dec. 650;) *Stone* v. *Fairbury, etc., R. Co.*, 68 Ill. 394; *Tate* v. *Ohio & Mississippi R. Co.*, 7 Ind. 479; *Lackland* v. *North Missouri R. Co.*, 31 Mo. 180; *Street Railway* v. *Cumminsville*, 14 Ohio St. 523; *Railway Co.* v. *Lawrence*, 38 Ohio St. 41; *Crawford* v. *Village of Delaware*, 7 Ohio St. 459; *City of Denver* v. *Bayer*, 7 Col. 113, (2 Pac. Rep. 6;) *Town of Rensselaer* v. *Leopold*, 106 Ind. 29, (5 N. E. Rep. 761.) In 38 Mich. 62, 71, the supreme court states it thus: "Every lot-owner has a peculiar interest in the adjacent street which neither the local nor the general public can pretend to claim; a private right in the nature of an incorporeal hereditament, legally attached to his contiguous ground; an incidental title to certain facilities and franchises, which is in the nature of property, and which can no more be appropriated against his will than any tangible property of which he may be owner." Although the proposition was apparently stated with care and upon deliberation, it seems to us (and we say it with diffidence, because of the eminent character of that court) that the decision of the case was a departure from the doctrine thus laid down, (and the same may be said of several of the cases referred to.) For where the railroad was laid upon a part of the street opposite the party's lot, of which part he did not own the fee, it denied his right to recover for damages caused to his lot incidental to a proper operating of the railroad, and limited it to cases where the acts of the company, of omission or commission, amounted to a nuisance. As the lot-owner can recover for a private nuisance, committed by the improper operation of a railroad, even on the company's own land, in which he has no interest, (*Baltimore & Potomac R. Co.* v. *First Bap-*

*tist Church,* 108 U. S. 317; 2 Sup. Ct. Rep. 719,) it would seem as though, if he is in no better plight in respect to the company's acts in the street, his "peculiar interest," distinct from that of the public, in the street, is of very little value. His title to his interest in the street is precarious, if authority from the state or municipality may justify what would without such authority be a private wrong as to him.

None of the cases we have referred to, nor any till we come to what are known as the "Elevated Railway Cases," attempt to define the limits and extent of the right of an abutting lot-owner in the street opposite his lot, where he does not own the fee. That it extends to purposes of ingress and egress to and from his lot is conceded by all. And for this purpose it may extend beyond the part of the street directly in front; for, as we have seen, an action by him will lie for obstructing the street, away from his lot, so as to cut off or materially interfere with his only access to it.

The questions are asked, how does the lot-owner get an easement in the street? what are the source and evidence of his title to his peculiar interest? The same questions may be asked with respect to the right or interest of the public. When a street is established by statutory dedication, or proceedings of condemnation, the public derives its right through the dedication or proceedings, and the record of them is the evidence of its right. When the dedication is at common law, the evidence of the public right rests in parol. When the offer of dedication is made, and is accepted and acted upon by the public to such extent that to permit the offer to be withdrawn would operate as a fraud, the title of the public to its right is completely vested. And such title is none the less perfect because there may be no express grant of the right, and no written evidence of it. The private right is vested by the same proceedings or acts that vest the public right. There is no need of express grant in one case more than in the other. In the case of dedication, after it has become perfect, the abutting lot-owners are presumed to act with respect to their lots on the faith of it as they are also in case of condemnation. Suppose one buys a piece of land fronting on a public street, or suppose he improves it, say by erecting buildings with reference

to use in connection with the street, would it not be a fraud on him to afterwards close the street? Not only do the abutting lot-owners pay for all the advantages which the street may furnish to their lots in the enhanced price of the lots, but, in cases of condemnation, their lots are liable to be, and are usually, specially taxed to pay the whole cost of the land taken; and, whether the street be established by dedication or condemnation, the abutting lots are liable to be and are usually specially taxed for the whole cost of putting and keeping it in proper condition for public use. It would be hard to justify the imposition of these taxes on them instead of on the public at large, if their owners have no other interest in or advantage from the street beyond the public at large, or if such interest or advantage is of so precarious a tenure that they may at any time be deprived of it.

It is, however, hardly necessary to inquire how the lot-owner gets his private right in the street; for it is established law that he has a private right, which, as we have stated, all the cases concede extends to the necessity of access. Access to the lot is only one of the direct advantages which the street affords to it. In a city densely peopled and built up, the admission of light and air into buildings is about as important to their proper use and enjoyment as access to them. Light and air are largely got from the open space which the streets afford. What reason can be given for excluding a right to the street for admitting light and air, when the right to it for access is conceded? For mere purposes of access to the lots, a strip 10 or 15 feet wide might be sufficient. Yet everybody knows that a lot fronting on a street 60 or 70 feet wide is more valuable, because of the uses that can be made of it, than though it front on such a narrow strip. Take a case in one of the states where the fee of the streets is in the state or municipality, and of a street 60 feet wide. The abutting lot-owners have paid for the advantages of the street on the basis of that width, either in the enhanced price paid for their lots, or, if the street was established by condemnation, in the taxes they have paid for the land taken. In such a case, if the state or municipality should attempt to cut the street down to a width of 10 or 15 feet, would it be an answer to objections by lot-owners that the diminished width would be sufficient for mere purposes of access to

their lots? It would seem as though the question suggests the answer.

The cases known as the "Elevated Railway Cases" (*Story* v. *N. Y. Elevated R. Co.*, 90 N. Y. 122, and *Lahr* v. *Metropolitan Elevated R. Co.*, 104 N. Y. 268; 10 N. E. Rep. 528) are notable in several respects: *First.* Because they were the first cases (and it seems strange that they should have been) in which was squarely presented, so as to demand a direct decision, the claim of abutting lots to an easement in the street in their front, for purposes of light and air; *second* for the number and ability of the counsel on each side, and the thoroughness with which they discussed every point involved, and presented every argument *pro* and *con* that could be suggested; and, *lastly* and especially, for the exhaustive character of both the prevailing and dissenting opinions by the members of the court. The latter case was really a reargument of the questions decided in the earlier, and in its opinion the court not only adhered to, but took pains to define, its earlier decision, and in some respects to go beyond it, and give to the principles determined a wider application than appears to have been given to them in the first case. We think that in those cases the doctrine is unqualifiedly established that no matter how the abutting owner acquires title to his land, and no matter how the street was established, so that the only right of the public is to hold it for public use as a street forever, (and the public gets no greater right under a dedication,) and no matter who may own the fee, "an abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of its location, and are not enjoyed by the general public, such as the right of free access to his premises, and the free admission and circulation of light and air to and through his property." The doctrine was followed and applied by the circuit court of the United States for the southern district of New York, in *Fifth Nat. Bank* v. *N. Y. Elevated R. Co.*, 24 Fed. Rep. 114. The general doctrine, we think, stands on sound reason and considerations of practical justice.

The private right in a street is of course subordinate to the public right. The latter right is for use as a public street, and the incidental right to put and keep it in condition for such use, and for no other

purpose. Whatever limitation or abridgment of the advantages which the abutting lot is entitled to from the street may be caused by the exercise of the public right, the owner of the lot must submit to. If putting it to proper street uses causes annoying noises to be made in front of his lot, or the air to be filled with dust and smoke, so as to darken his premises, or pollute the air that passes from the street upon them, he has no legal cause of complaint. His right to complain arises when such interruptions to the enjoyment of his private right are caused by a perversion of the street to uses for which it was not intended; by employing it for uses which the public right does not justify. That constructing and operating an ordinary commercial railroad on a street is a perversion of the street to a use for which it was not intended, one not justified by the public right, and which the state or municipality, as representing such right, cannot, as against private rights, authorize,—the decisions of this court are full and explicit. It has always been held here, contrary to the decisions in many of the states, that laying such a railroad upon a public street or highway is the imposition of an additional servitude upon it,—an appropriation of it to a use for which it was not intended. *Carli v. Stillwater Street Ry. etc., Co.,* 28 Minn. 373, (10 N. W. Rep. 205,) and cases cited. Many of the decisions cited to show that upon a state of facts such as exists in this case the lot-owner can have no right of action, were by courts which hold that the use of a street for an ordinary railroad is a legitimate street use,—one that comes within the uses and purposes for which streets are established. Where that is the rule, inasmuch as the right or interest of the abutting lot-owner is subordinate and subject to the right to devote the street to use for a railroad, as well as for any other proper mode of street travel, of course no cause of action in favor of the lot-owner, whether he owns the fee of the street or not, could grow out of the proper construction and operating of a railroad in the street. For that reason the decisions of such courts can be of no authority here, where a different rule upon the rightfulness of using the street for such a purpose prevails.

The conclusions arrived at are that the owner of a lot abutting on a public street has, independent of the fee in the street, as appur-

tenant to his lot, an easement in the street in front of his lot to the full width of the street, for admission of light and air to his lot, which easement is subordinate only to the public right. That depriving him of or interfering with his enjoyment of the easement for any public use not a proper street use is a taking of his property within the meaning of the constitution. That appropriating a public street to the construction and operation of an ordinary commercial railroad upon it is not a proper street use. That where, without his consent and without compensation to him, such a railroad is laid and operated along the portion of the street in front of his lot, so as upon that part of the street to cause smoke, dust, cinders, etc., which darken or pollute the air coming from that part of the street upon his lot, he may recover whatever damages to his lot are caused by so laying and operating such railroad on that part of the street.

That the recovery should be limited to the damages caused by operating the railroad in front of plaintiff's lot, and ought not to include any that might have accrued from operating it on other parts of the street, was undoubtedly the opinion of the court below when it came to make its findings of fact; for it finds as a fact no other damage than the depreciation in the rental value of the lot caused by operating the railroad on the street in front of it. The proof of depreciation in rental value, however, was made in part by admitting proof (against defendant's objection) of the rental value "with the road constructed on that street, and operated there as roads usually are." There was no other evidence of depreciation. The evidence takes into account not merely the consequences to the lot from operating the railroad in front of it, but also from operating the road on the whole or any part of it, however remote from the lot. This would allow plaintiff to recover for such consequences of operating the road as he suffered in common with the public generally, and not merely such as were peculiar to himself. The evidence was erroneously admitted, and, as there was no competent evidence to sustain the finding of the amount of damage, the finding must be set aside. A new trial is therefore ordered of the issue as to the amount of damage, (but of no other issue,) unless the plaintiff will consent in the court below to take judgment for nominal damages merely.

VANDERBURGH, J., (*dissenting.*)   If a street or highway is so occupied or incumbered as to occasion special and peculiar injury to an abutting land-owner, an action for damages or an injunction may be sustained.   But I do not assent to the proposition that such owner has property interests in the street, beyond the boundary of his land therein, (presumptively the centre line thereof,) which are the proper subject of condemnation proceedings.   The opposite rule, I think, has always been accepted and acted on in this state, and is supported by the great weight of authority.   It is hardly practicable to make any distinction in this respect between that portion of the street beyond his boundary and opposite his lot and adjoining land in the street on either side thereof.   And it would seem to be difficult to fix upon any sound rule or safe basis for estimating and limiting the damages in such cases.