107 So.2d 216 (1958)
CITY OF TAMPA, a municipal corporation of the State of Florida, Appellant,
v.
The TEXAS COMPANY, a New York corporation, et al., Appellees.
No. 298.
District Court of Appeal of Florida. Second District.
June 13, 1958.
Rehearing Denied July 10, 1958.
*217 Ralph A. Marsicano, Neil C. McMullen, William R. McCown and H. Vincent Thornton, Tampa, for appellant.
Macfarlane, Ferguson, Allison & Kelly, John M. Allison, Tampa, for appellees.
ALLEN, Judge.
This is an appeal taken by the City of Tampa from a judgment entered in condemnation proceedings in which the city took a corner of a lot upon which was located a filling station. There is a lot owned by each of the defendants. The parties will be referred to as the city and the defendants.
*218 The answer of each defendant alleged that the land taken was a part of a larger contiguous tract of land on which there was a filling station. The answers then claimed damages for injury to the adjoining land and station and for loss of business during construction of the highway and requested attorney's fees and costs.
The property taken in each case was a small parcel of about 190 square feet on which was erected a sign. The admitted value of each parcel was $1,000.00.
The two main questions involved in this appeal have apparently not been passed upon by the Supreme Court of this State. One question is whether or not a person, part of whose land is condemned for a public purpose, may recover consequential damages to the remainder of his land resulting solely from the use to which the public authority puts other land already owned by such authority, such use being for the same public purpose, keeping in mind that such consequential damage would definitely not be recoverable in absence of a taking.
The second question is whether or not an oil company, which owns but does not operate a filling station, having leased the station to an individual to operate, and which wholesales its products to its lessee, may recover for loss of profits during the time the filling station is not doing business by reason of the paving of a street upon which the filling station abuts.
The city states the above questions involved as follows:
I. "In condemnation of a part of property, the court improperly directed the jury to assess damages admittedly resulting solely from change in grade on existing highway right-of-way; and improperly refused to limit the damages to the taking and the consequences of the taking."
II. "The court improperly ruled damages are recoverable by a lessor-wholesaler for loss of profits due to temporary interference with access to the lessees' business occasioned by progress of work on a street improvement."
It appears that the approaches of the parking apron of each station had been built across a part of the road right-of-way up to the edge of the street pavement. In the construction program giving rise to the taking of the corners of the filling station properties of the two defendants, the street was widened to the edge of the right-of-way, and the grade of the road was lowered, resulting in a lowered curb line. This necessitated extensive repaving and rearranging of the defendants' approaches and facilities. The small parcels of land taken at the corners did not involve any of the approaches from the street to the filling stations of the defendants.
The lower court instructed the jury that they might find no less than certain minimum amounts established by the evidence for: (1) the taking of the corners of the land, (2) the damages to the approaches, and (3) the loss of business; but that they could find greater damages.
The city admits the obligation to pay fair value for the corners taken plus damages to the remaining property as a result of the taking, but argues that there was no liability for damages for the change of grade as that did not result from the taking.
Admittedly, had not the two small corners been taken by the city, no compensation would be allowed the defendants even though the lowering of the grade of the street would cause extensive damage to them. The Florida courts have held uniformly that although an abutting land owner may suffer consequential damage for the use of public lands by public authority, such is damnum absque injuria and therefore not recoverable by the land owner in absence of an actual, physical taking by such public authority. Such use includes widening a street or changing the grade of a *219 street. See Selden v. City of Jacksonville, 1891, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370; Bowden v. City of Jacksonville, 1906, 52 Fla. 216, 42 So. 394; Weir v. Palm Beach County, Fla. 1956, 85 So.2d 865; Lewis v. State Road Department of Florida, Fla. 1957, 95 So.2d 248; 12 Fla.Jur., Eminent Domain, Section 88.
We approach the principal question involved in this case which has never been decided by our Supreme Court. That is whether or not, where a condemning authority takes a small part of a parcel of land and where such taking did not in itself cause any damage to the remainder of the parcel, the owner thereof should receive compensation because the public work involved, in the instant case the widening of a street and the lowering of the pavement, necessitated extensive repair on a filling station located on the street.
One of the witnesses who made an appraisal of the property (A 6) gave the following answers with reference to the property taken:
"Q. This area of the taking as it now stands, is there any of that being used for filling station purposes other than the signs you mentioned?
"A. You mean the 190 square feet?
"Q. Yes.
"A. No sir, it is at the edge of the property and is only used at the moment for signs. The sidewalk crosses part of it."
The appraiser, Richard E. Knight, who had been used by the city to show the value of the real estate taken, was made a witness by the defendants and gave the following evidence:
"Q. This incline you are talking about, that is occasioned by digging a gutter and not the taking, is that correct?
"A. Yes.
"Q. The digging is done on the road right-of-way?
"A. That's right.
"Q. They are not going over the right-of-way?
"A. Not according to our plans. (A 5)"
Section 12 of the Declaration of Rights of the Constitution of Florida, F.S.A., provides:
"Nor shall private property be taken without just compensation."
Article XVI, § 29, of the Constitution provides:
"No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of 12 men in a court of competent jurisdiction as shall be prescribed by law."
In condemnation proceedings, the jury is authorized to award damages for depreciation of value of land not taken. State Road Department of Florida v. Zetrouer, 1932, 105 Fla. 650, 142 So. 217; Worth v. City of West Palm Beach, 1931, 101 Fla. 868, 132 So. 689; Doty v. City of Jacksonville, 1932, 106 Fla. 1, 142 So. 599.
In Orgel, Valuation under Eminent Domain, Vol. 1, page 253 (2d ed. 1953), the following appears:
"Section 54. Distinction between Damages Due and Damages Not Due to the Taking of the Owner's Property.
"The courts have all recognized that the depreciation in market value of the remainder caused by the physical separation or severance of the part taken is due to the taking and they have held that compensation for this type of injury must be included in damages to the remainder. But they *220 have distinguished these severance damages from the `consequential' damages arising by reason of the use to which the condemner intends to put the part taken. It is with reference to these so-called consequential damages that the problem of differentiating between damage that is due and damage that is not due to the taking chiefly arises.
"The attempt of the courts to draw this distinction is due to the fact that, with certain exceptions, an owner of property is not entitled to recover for any diminution in value which it may suffer by virtue of the construction and operation of adjacent public works where no part of his property is deemed to have been `taken'. It would seem, therefore, to be unfair discrimination to reimburse a property owner for all similar damages done to his property simply because a portion of it, however small, may have been condemned. Bearing this point in mind, the courts have attempted, some of them more vigorously than others, to distinguish between damages which a particular owner has suffered because a part of his property has been taken, and damages which this same owner may have suffered along with adjacent property owners because public works, detrimental to the remainder of his property, have been located in the neighborhood. Needless to say, there are great difficulties, both practical and theoretical, in making a distinction between these two types of damages, and courts have differed not only in the manner, but also in the zeal, with which they have attempted to draw it.
"In so far as the attempt to distinguish these types of `consequential' damages has been made at all, two different bases of distinction may be noted. The first rule, which is perhaps peculiar to Massachusetts, may be called the `Increased-Proximity' rule. The second rule, which has been applied to some extent by the United States Supreme Court and by a few state courts, may be called `the rule delimiting the damage to that resulting from the harmful use of the owner's former property.' The distinction between these two rules, however, is by no means clear-cut, and, so far as we are aware, has not been expressly stated in judicial opinions or in the text books on eminent domain."
Orgel, Valuation under Eminent Domain, Vol. 1, page 257, Section 56 (2d ed. 1953), further states:
"Outside of Massachusetts, a somewhat different distinction has been made in a number of jurisdictions between damages attributed to the taking and other consequential damages. This is the rule which limits recovery to the damages resulting from the construction and operation of such part of the public works as has been erected on the land taken from the particular owner.
* * * * * *
"In this hypothetical case, we have assumed that the damages done by the right of way on the one hand, and by the terminal on the other hand, are in fact separately measurable. Perhaps this is a plausible assumption here; but in most of the cases that have actually arisen, it is not easy to see how a separation can in fact be made. Frequently, therefore, a court declines to apply the rule, and holds that all the damage resulting from the construction and operation of the public works must be paid for because it is not practicable to distinguish between the damage from the use of the owner's own land and damage from the use of adjacent land."
In Andrews v. Cox, 1942, 129 Conn. 475, 29 A.2d 587, 590, the Connecticut Court said:
"Where the use of the land taken constitutes an integral and inseparable *221 part of a single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land." See also Hollister v. Cox, 1943, 130 Conn. 389, 34 A.2d 633.
In another Connecticut case, Lefebvre v. Cox, 1942, 129 Conn. 262, 28 A.2d 5, 6, plaintiff's property abutted on a state highway. The highway, originally twenty-two feet of paving on a sixty-six foot right of way, was widened, curbings were constructed and a sidewalk was constructed. As a result, the grade was changed, and the pavement was some thirty feet nearer plaintiff's line. All such improvements were within the original right-of-way. In conjunction with this work, the Highway Commissioner took an easement on plaintiff's land in order to reslope her land from the mentioned sidewalk to a building on her land, to reconstruct steps to the building and make other incidental changes. An award of $200 was made to plaintiff for such easement. Upon opposition by plaintiff, the work on her land was stopped before completion. Plaintiff sued, and the referee made various findings of damage, application of which depended upon whether or not plaintiff was entitled to damage resulting from the improvements solely within the highway right-of-way. The trial court denied such damage, and plaintiff appealed. The Connecticut Supreme Court of Errors held:
"The state has not appealed. The only claim of the plaintiff is that, since the highway commissioner finally took by condemnation an easement in her land outside of the former bounds of the highway, she is entitled to recover damages on the basis of the depreciation in the value of her property caused by the entire work, found by the referee to be $3,300. The state contends, on the other hand, that for all work done within the former bounds of the highway the plaintiff is not entitled to any damages but is entitled to damages only for what was done outside of the highway bounds. It is a well-settled principle of our law that the public authorities acquire the right, except as otherwise provided by statute, to establish a grade for a highway or otherwise improve it at any time after the taking without liability for consequential damage to an adjoining owner none of whose property is taken. (Citations omitted) The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value. Andrews v. Cox, 127 Conn. 455, 17 A.2d 507. The changes to be regarded are those which take or will take place in the uses of land taken, not those which may be made in land previously devoted to highway uses. Tyler v. Town of Darien, 115 Conn. 611, 618, 162 A. 837. The finding of the referee is not attacked, or in any way questioned, that the laying of the concrete roadway, the construction of the sidewalk and the curb and the change of grade were all accomplished by work within the limits of the old highway. The plaintiff, therefore, is not entitled to an award of the $3,300 which she claims, but only to $1,000, the award of which to her is not questioned upon this appeal."
The Maryland Court of Appeals, in the case of Johnson v. Consolidated Gas, etc., 1947, 187 Md. 454, 50 A.2d 918, 926, 170 A.L.R. 709, commented on the case of Campbell v. United States, 1924, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328, as follows:
"* * * That case involved the fixing of compensation for the taking of property by right of eminent domain. *222 The United States took 1.81 acres of the land of John V. Campbell to be part of a site for a plant for the production of nitrates. The site taken was a garden lying at the foot of a hill on which Campbell's residence was situated. The entire tract, including the land taken from Campbell, consisted of 1300 acres. The United States constructed on this site roads, buildings, railroads, a sewage system, and such other things as are usually necessary to a large industrial plant. The United States District Court found that the value of the land taken was $750, and that by the taking, the remainder of Campbell's property was damaged to the extent of $2,250. `It also found that, by reason of the uses to be made of lands acquired from others for the same project, plaintiff's lands not taken were damaged $5000.00.' The Court allowed the items of $750 and $2250 and disallowed the $5000 item and gave judgment for $3000.00 and interest. From that judgment Campbell appealed.
"The Fifth Amendment to the Constitution of the United States provides in part, `nor shall private property be taken for public use, without just compensation.' Damages are thereby limited to `the taking' as in the Constitution of Maryland, supra, and Article 33A of the Code of Maryland, supra. The Supreme Court of the United States in that case said that Campbell was entitled to have the just compensation safeguarded by the Fifth Amendment of the Constitution; that is, the value of the land taken and the damages inflicted by the taking. The proposed use of the land taken from others did not constitute a taking of Campbell's property. He had no right to prevent the taking and use of land of others. The condemnation did not deprive him of any right in respect to the land of others. The Court said further, at pages 371 and 372 of 266 U.S., at page 116 of 45 S.Ct., in affirming the judgment of $3000:
"`And, if the land taken from plaintiff had belonged to another, or if it had not been deemed part and parcel of his estate, he would not have been entitled to anything on account of the diminution in value of his estate. It is only because of the taking of a part of his land that he became entitled to any damages resulting to the rest. In the absence of a taking, the provision of the Fifth Amendment giving just compensation does not apply; and there is no statute applicable in this case that enlarges the constitutional right. If the former private owners had devoted their lands to the identical uses for which they were acquired by the United States or to which they probably will be put, as found by the court, they would not have become liable for the resulting diminution in value of plaintiff's property. The liability of the United States is not greater than would be that of the private users. Plaintiff cites and relies upon Blesch v. Chicago & N.W. Ry. Co., 43 Wis. 183 (and other citations) to support his contention that he is entitled to have the damages found to have resulted to the remainder of his estate by the uses made and to be made of the lands acquired from others. In each of these cases, it was impossible separately to ascertain the damages caused to the remainder of the owner's tract by the taking and proposed use of a part of it. In this case, such damages were separately found, and plaintiff does not complain in respect of the amount of that element. We think that plaintiff's contention is not sustained. The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the *223 acquisition and use of adjoining lands of others for the same undertaking.' (Citations omitted)
"In the instant case, as in the case of Campbell v. United States of America, supra, the damages resulting to the remainder of the land not taken were separable from those caused by the use to be made of the land acquired from others, because appellants own witnesses in their testimony were able to separate such alleged damages. We must therefore conclude that the trial judge was correct in refusing the proffered testimony as to the damage caused to the appellant's land by the use of adjoining land of others on which the proposed overhead electric line is to be constructed. As we find no error the judgment will be affirmed."
In the case of City of Crookston v. Erickson, 1955, 244 Minn. 321, 69 N.W.2d 909, 912, the Supreme Court of Minnesota had before it for consideration an appeal in a proceeding to condemn land for use as a site for a municipal sewage treatment and disposal plant and for right-of-way from the main sewer line to the plant. The Court stated that it was concerned mainly with three parcels of land which, for convenience, would be referred to as tracts A, B, and C. Tract A was a wooded tract bounded on the west by Red Lake River and containing approximately 9 acres. All of the structures which the city proposed to erect in connection with the disposal plant were to be located on tract A, which was owned by one Virgil Erickson.
Tract B, which was owned by Abel and Hulda U. Erickson, contained approximately 15.17 acres. The northwest corner of tract B jutted into tract A thereby forming part of the south and part of the east boundary of tract A. The city condemned the fee to approximately six and one-half acres of tract B.
Farther to the east, and across Minnesota Street from tract B, lay tract C which was also owned by Abel and Hulda U. Erickson. It consisted of 7.28 acres. The west portion of tract C which fronted on Minnesota Street was high ground, but the east part sloped down to the Red Lake River and often flooded in the spring. The city condemned the fee to a strip 33 feet wide in the east or low portion of tract C to acquire a right-of-way through which to run the main sewer line leading to the treatment and disposal plant to be erected on tract A. The sewer line was to be laid under the surface, but there were to be manholes at regular intervals. The Court, in its opinion, said:
"The principal question presented for decision is the correctness of the position adopted by the trial court that the reduction in the market value of the uncondemned portions of tracts B and C caused by the mere proximity of the sewage treatment and disposal plant is not a factor for the jury's consideration in awarding damages. Some of the assignments of error deal with the trial court's refusal to permit expert witnesses to testify concerning the reduction in market value of tract B due to the psychological effect upon potential buyers for residential purposes created by the proximity of the sewage treatment plant. Others challenge the court's refusal to instruct the jury that it should consider the reduction in value due to psychological factors in making its award.
* * * * * *
"* * * However, in cases where there is a partial taking, the injured owner is not required to show that the injury is peculiar to his remaining property. It is sufficient that the damage is shown to have been caused by the taking of part of his property even though it is damage of a type suffered by the public as a whole. State v. Rascoe, 181 Tenn. 43, 178 S.W.2d 392, see, Lamont v. West Penn Power Co., 300 Pa. 78, 84, 150 A. 155, 157; 4 Nichols, Eminent Domain (3 ed.) § 14.1. This *224 is true even where the claimed damage to the remaining property is due to the use to which the property taken will be devoted by the taker. However, an important qualification of this rule must here be noted. Recovery is generally limited solely to the damage caused by the taker's use of the land acquired from the owner of the remainder area. Stated in another way, the owner of the remainder area is not ordinarily entitled to recover for damage caused his remaining land by the taker's use of property acquired from adjoining landowners even though his and all property taken from others is used to further the same project. Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328. This has been the rule in Minnesota, Adams v. Chicago, B. & N.R. Co., 39 Minn. 286, 39 N.W. 629, 1 L.R.A. 493.
"However simple this general rule appears on the printed page, its application to specific fact situations presents grave problems. It has been characterized by one commentator on the subject as an `attempt to separate the inseparables.' 1 Orgel, Valuation Under Eminent Domain (2 ed.) § 56, p. 263. An illuminating illustration of this problem can be found in the facts now before us. It appears that none of the buildings which will constitute the sewage treatment plant will be erected on tract B-1, but instead will be confined to tract A. Does this compel the conclusion that the claimed reduction in the market value of tract B-2 is attributable solely to the use of tract A, and that, as a matter of law, tract B-2 has not been damaged in this respect by the taking and use of tract B-1? We think not. Certainly `use' in this context implies more than actual construction on the condemned tract. It can be argued with equal conviction that the acquisition of tract B-1 was considered desirable by the city in order to provide a proper `site' for the sewage plant and that tract B-1 is therefore just as essential to the project as the tract upon which the structures will be located. Furthermore, there is nothing in the record to indicate any agreement on the part of the city that no buildings or structures will be erected on tract B-1 in the future.
* * * * * *
"* * * The determination of whether the part taken constitutes `an integral and inseparable part' of the whole improvement ordinarily is a question for the trier of the fact, and where the use of the part taken is found to be separable, consequential damages should be allowed only for the use of the part taken, in accordance with the Adams case. It follows that the trial court erred in rejecting the offered expert testimony concerning the reduced market value of tract B-2 and in refusing to instruct the jury that, if they found the use of tract B-1 was an integral and inseparable part of the sewage disposal plant project, they should consider the effect of the entire disposal plant in arriving at tract B-2's reduced value.
"Appellants contend that since a portion of tract C was condemned to provide a right of way for the sewer pipe leading to the sewage disposal plant they likewise are entitled to a new trial as to tract C notwithstanding the fact that there is nothing in the record to support a conclusion that the market value of tract C was lowered by reason of the proximity of the disposal plant and no evidence was offered at the trial to this effect. They assert, however, that in view of the trial court's position with respect to tract B, they did not pursue the matter further with respect to tract C but have not abandoned their claim for this type of consequential damage to this tract.
"As previously noted a strip 33 feet wide in the east portion of tract C was *225 condemned to acquire a right of way through which to run the main sewer line leading to the sewage treatment and disposal plant to be erected on tract A. Although the sewer line is to be laid underground there will be manholes at regular intervals. It is our opinion that, as a matter of law, the use of the land taken on tract C does not constitute an integral and inseparable part of the sewage disposal plant project and therefore any depreciation in the market value of tract C resulting from the mere proximity of the disposal plant and the contemplated user thereof is not recoverable. Cf. Horton v. Colwyn Bay and Colwyn Urban Council (1908) 1 K.B. 327.
"* * * The existence of a unitary use giving rise to a right to recover consequential damages to the uncondemned portion of the unit is generally a question of fact. As this court said in Peck v. Superior Short Line Ry. Co., 36 Minn. 343, 345, 31 N.W. 217, 218:
"`We do not undertake the perilous task of formulating a specific and exact rule to govern all instances in which the question of entirety is involved. The question is probably so much one of fact as to make it impracticable to lay down any such rule which will not be a hindrance, rather than a help. As with respect to questions of negligence, each case, as it comes up, must rest largely upon its own facts.'"
The court below permitted the defendants to recover for loss of profits due to temporary interference with access to the businesses operated by the defendants' lessees. The record in this case shows that the two defendants involved in this appeal are wholesale oil distributors, and that each owns a filling station, a small part of the corners of each of which were condemned in this case. The question submitted by the appellant, as hereinabove set forth, brings into play the interpretation of Section 73.10 (4) Florida Statutes, F.S.A., which is as follows:
"When the suit is by the state road department, county, municipality, board, district or other public body for the condemnation of a right-of-way, and the effect of the taking of the property involved may damage or destroy an established business of more than five years standing owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the jury shall consider the probable effect the denial of the use of the property so taken may have upon the said business, and assess in addition to the amount to be awarded for the taking, the probable damages to such business which the denial of the use of the property so taken may reasonably cause. Any person claiming the right to recover such special damages shall set forth in the pleadings filed by him in the nature and extent of such special damages."
The general rule has, with very few exceptions, been that injury to a business is not an appropriation of property for which compensation must be made in condemnation proceedings. See 18 Am.Jur., Eminent Domain, § 259. The general rule, of course, is not applicable where there exists a statutory right to compensation for loss of profits and other business losses such as exists in Florida by virtue of Section 73.10(4), Florida Statutes, F.S.A.
In 12 Fla. Jur., Eminent Domain, § 100, it is stated:
"* * * But where the suit is by a governmental agency for the condemnation of a right of way, and the effect of the taking is to injure or destroy an established business of more than five years standing owned by the party whose lands are being taken, located on adjoining, adjacent, or contiguous lands owned by such party, the jury must consider the probable effect the *226 use of such property may have on the business, and assess, in addition to the amount awarded for the taking, the probable damages to such business which the use of the property may reasonably cause." (Italics ours)
The testimony in this case fails to bring the businesses operated within the purview of this rule. While the filling stations were owned by the defendants, the businesses were not owned by either of the defendants, but by their lessees who operated the businesses. In addition thereto, as hereinbefore set forth in this opinion, the damage to the businesses was not derived from the property taken, or at least there was no evidence to that effect. Also, the evidence showed that the lessees of each of the filling station owners had operated the station for less than the five year period required under the Statute.
The defendants in this case are, of course, the owners of the involved land. They are also wholesalers of the petroleum products sold by their respective lessees in the businesses located on the involved premises. Therefore, the defendants are not in the wholesale business on such premises; their lessees are in the retail business on the premises. Any loss of profits are losses to the retail businesses. Defendants can no more claim this loss under Section 73.10, Fla. Stat. 1955, F.S.A., than could another landowner who happened to sell wholesale cosmetics to a drug store run by his lessee where a public improvement took some of the owner's land and also interfered with the drug store's business.
The following charge to the jury with reference to damage to business in eminent domain proceedings, which appears in 7 Miami Law Quarterly, page 157, is one of the jury charges in wide use by Circuit Judges in this State. It is taken from "Oaths and Standard Charges to Jury in Civil, Eminent Domain and Capital Cases in Florida" which was originally prepared for use for the Judges of the 11th Judicial Circuit.
"(43) If you find from the evidence that the effect of the taking of the property involved may injure, damage or destroy an established business of more than five years standing, owned by the defendant whose lands are sought to be taken, located upon the lands sought to be taken, and lands adjacent or contiguous thereto, then you shall consider the probable effect the use of the property so taken may have upon said business, and assess in addition to the amount to be awarded for the taking, the probable damages to such business which the use of the property so taken may reasonably cause.
"If you find from the evidence that the defendant owns an established business located on the lands taken, you should consider the nature and extent of such business in arriving at the value of such lands. You must not award additional damages on account of the destruction of such business, as the nature and extent thereof are to be taken into consideration in fixing the value of the right of way taken.
"If any part of such business is located on adjoining, adjacent or contiguous lands owned or held by said defendants, that are not being condemned in this action, and if the taking of the property involved may injure, damage or destroy such portion of such business, then you will consider the probable effect the use of the property so taken may have upon such business, and assess in addition to the amount to be awarded for the taking, the probable damages to such business which the taking and use of the property taken for right-of-way purposes may reasonably cause. However, unless it is reasonable to suppose that the defendant will suffer an actual loss in that portion of his said business located on such adjoining, adjacent or contiguous lands because of the taking and use of the property taken for right-of-way *227 purposes, then you will not assess any damages to such business located upon the adjoining, adjacent or contiguous lands."
Under the above charge, the evidence in this case would not justify any damages to the defendants from business losses.
We are not here deciding whether or not the time requirement of former Section 73.10, now Section 73.10(4), Florida Statutes 1957, F.S.A., can be fulfilled by totaling the length of time a particular business is run by different lessees. That question is not involved in the facts of this case. Nor do we decide whether a lessee can in any case, claim loss of profits under present Section 73.10(4), since these defendants' respective lessees had been in businesss less than five years. We only hold that these defendant landowners may not claim loss of profits because of the interruption of their lessees' businesses.
The appellant also assigns as error the refusal of the trial court to allow evidence of sales of other property comparable in quantity and quality to prove the value of the property condemned where such sales were made to a party with power to condemn. We are of the opinion the lower court was correct in so ruling. Current market sales of property, which is sufficiently similar to the property condemned, may be used if such sales are freely and voluntarily made. The sales sought to be used in this case were not voluntary sales in that they were sales to a public authority who would condemn the property purchased in the event the sales were not consummated.
The reasoning which forbids the consideration of forced sales also renders it incompetent for either party to put in evidence the amount paid by the condemnor to the owners of neighborhood lands taken at the same time. 4 Nichols, Eminent Domain, Sec. 12.3113(2). Also see 1 Orgel, Valuation under Eminent Domain, § 147 (2d ed. 1953). We might also note that appellant states in its brief:
"The numerical weight of authority seems to be that sales under such circumstances are not admissible."
Since this case must be retried, we deem it a priori that we should also state that the burden of showing damage to the remainder of a landowner's property by reason of the taking is on the landowner. See United States v. 72.35 Acres of Land, etc., D.C.E.D.N.Y. 1957, 150 F. Supp. 271; Department of Public Works and Buildings v. Finks, 1956, 10 Ill.2d 15, 139 N.E.2d 267; Tennessee Gas Transmission Co. v. Wolfe, 1953, 159 Ohio St. 391, 112 N.E.2d 376; Braughler v. Commonwealth, 1957, 388 Pa. 573, 131 A.2d 341. See also: 4 Nichols, Eminent Domain, Sec. 14.21(2), Note 56, pg. 316.
The above cause is hereby reversed for a new trial consistent with the opinions hereinabove expressed.
KANNER, C.J., and SHANNON, J., concur.